J. CLARK TAYLOR, Executor, et al. v. JOHN L. TAYLOR et al.

Middle Section. September 5, 1931.

Petition for Certiorari denied by Supreme Court, February 13, 1932.

William J. Webster, J. C. Taylor and J. C. Voorhies, all of Columbia, and Pitts, McConnico & Hatcher, of Nashville, for plaintiffs in error.

Seay, Stockell, Edwards & Keeble, of Nashville, and L. Z. Turpin and Horace Frierson, both of Columbia, for defendants in error.

FAW, P. J. Leonard Taylor (usually called Len Taylor), a citizen and resident of Maury County, Tennessee, died at his usual place of residence in the City of Columbia on October 6, 1929, and on November 21, 1929, an unsigned and unwitnessed script was offered for probate in common form in the County Court of Maury County as the last will of said Len Taylor, deceased. The County Court declined to admit said writing to probate and .the proponent appealed to the Circuit Court of Maury County, where the judgment of the County Court was reversed, and the propounded writing was admitted to probate in common form as the last will and testament of Len Taylor, deceased, sufficient to dispose of personal property only, and it was certified to the County Court of Maury County to be there "executed according to law," but the judgment of the Circuit Court reserved to anyone interested in the estate of the decedent the right to institute a contest of said will by appropriate proceedings.

Thereafter, to-wit: on April 8, 1930, pursuant to petitions of John L. Taylor and others, suing as "heirs at law and distributees of said Len Taylor, deceased," the County Court of Maury County ordered, in the matter of Len Taylor's will, that "the original will be sent up to the Circuit Court and a transcript be made of all proceedings relating thereto and filed in the Circuit Court by the Clerk of this Court where an issue of devisavit vel non may be formed to try the validity of this will according to law."

The record from the County Court, including the original paper writing theretofore probated in common form as the will of Len Taylor, deceased, was accordingly filed in the Circuit Court of Maury County, and an issue of devisavit vel non was there made up and tried to a jury at the June Term, 1930, but the jury failed to agree upon a verdict and were discharged and a mistrial was entered.

The case was again tried at the November Term, 1930, when the jury returned a verdict finding the issue in favor of the defend-

ants (the contestants). The proponents, J. Clark Taylor, Executor, and others, moved for a new trial on numerous grounds set forth in a written motion, but their motion was overruled and the Court thereupon ordered and adjudged that the paper writing aforesaid, which is undated and unsigned and not witnessed, is not the last will and testament of the said Len Taylor, deceased, and that the probate thereof in common form in the Circuit Court and County Court as aforesaid, be and the same is vacated, annulled and set aside. Judgment was also rendered in favor of the contestants and against the proponents and their surety for all the costs of the cause.

The proponents excepted to the action of the Court in overruling their motion for a new trial, and in finding against the will of Len Taylor and the probate thereof, and in setting aside the probate of the will, and in adjudging the cost against them, and prayed an appeal in the nature of a writ of error to this Court, which appeal was granted by the trial court and perfected by the proponent J. Clark Taylor, Sr., Executor, and the case has been heard here on the transcript of the record, assignments of error on behalf of the proponents, briefs on behalf of the parties, respectively, and oral arguments of counsel at the bar.

Len Taylor was about seventy years of age at the time of his death, and had never been married. He was possessed of a substantial estate, consisting of both realty and personalty. He and his sister Mrs. Virginia A. Hodge and his brother J. Clark Taylor, Sr., lived together in the City of Columbia, Tennessee. Len Taylor was about fourteen years younger than his sister Mrs. Hodge and about five years younger than his brother J. Clark Taylor, Sr. Mrs. Hodge was a widow and was the only surviving sister of Len Taylor, and J. Clark Taylor, Sr., was his only surviving brother.

Len Taylor had two brothers who predeceased him; Will Taylor and Sam Taylor. Will Taylor never married. Sam Taylor left three sons and three daughters surviving him, but before the death of Len Taylor two of these daughters died and each left children surviving. The four living children of Sam Taylor and the children of his two deceased daughters instituted this contest of the alleged will of Len Taylor, and Mrs. Virginia A. Hodge was later admitted as a contestant.

Mr. Hugh Lee Webster, a member of the Columbia bar, was the "exclusive counsel" of Len Taylor, "in regard to all of his business in Tennessee," for three years or more before and until the death of the latter, and Len Taylor was accustomed to use Mr. Webster's office for the purpose of receiving and answering his mail and attending to other matters of business, and Mr. Webster frequently advised and assisted him in these matters, as well as acting as his legal adviser.

Beginning in the Autumn of 1926, Len Taylor, from time to time, discussed with Mr. Webster, in a general way, the matter of the preparation of his will, and on September 18, 1929, he (Taylor) definitely employed Mr. Webster to write his will. Thereafter frequent conversations were had between Len Taylor and Mr. Webster concerning the contents of Taylor's will, and in the afternoon of Friday, September 27, 1929, Mr. Webster submitted to Len Taylor the draft or form of a will he had prepared in his (Webster's) handwriting, written in pencil, and each item of same was at that time read by Len Taylor and discussed between him and Mr. Webster, and after Mr. Webster had made some interlineations, and an addition to the last clause, at the direction of Len Taylor, the latter expressed his approval of the entire will as thus written and instructed Mr. Webster to have it typewritten—saying that he would be back, with his witnesses, to sign it.

About four o'clock on the following Wednesday morning, October 2nd, Len Taylor was stricken with a serious illness, and he continued to grow worse until Sunday afternoon, October 6, 1929, when he died. The will prepared for him in the manner aforesaid was never signed by him, and the original draft, in the pencil writing of Mr. Webster, as approved by Len Taylor on September 27, 1929, is the unsigned and unwitnessed will admitted to probate in common form as before stated, and which is propounded for probate in solemn form in this case, and which is in words and figures as follows:

"THE LAST WILL AND TESTAMENT OF LEN TAYLOR.

"Knowing the uncertainty of life and being in feeble health but of sound and disposing mind, I do make and publish this my last Will and Testament revoking all others.

"(1) I want all of my just debts which are few and small paid by my Executor, including my burial expenses, out of the first funds coming into his hands.

"(2) I give to my sister during her life time the income from the monies now invested in preferred stock of the Southern Cities Power Co., and if in the discretion of the Trustee of my estate hereinafter named, it should become wise to change said stock investment, then I want said money invested during the life time of my sister in some good industrial bonds, and the income from them paid to my sister during her life.

"(3) I give to my niece, Gene Taylor, $10,000 to be held in trust by the Trustee under my Will or his successor, until said Gene Taylor arrives of age and only the income from said $10,000 to be paid to her during her minority.

"(4) I give to my nieces (Brown's children) $10,000, same as 3.

"(5) All the rest and residue of my property, real, mixed and personal, I give to my brother, J. Clark Taylor, Sr., as Trustee, the corpus of which shall be kept together as far as possible but the income therefrom to be used by said J. Clark Taylor, Trustee, for himself and my sister and if said income is not sufficient for the support and maintenance of said J. Clark Taylor, Sr., and my sister during their old age, then I leave it to the discretion of my said Trustee to encroach upon the corpus of said estate.

"(6) At the death of my sister I give the remainder of the estate given to her for life to my two nephews, equally, W. Brown Taylor and J. Clark Taylor, Jr., and at the death of my brother, J. Clark Taylor, Sr., I give the remainder of the trust estate herein created equally to my two nephews, W. Brown Taylor and J. Clark Taylor.

"(7) I nominate and appoint my brother, J. Clark Taylor, Sr., my Executor and Trustee under this Will without bond and in the event, he dies before my sister, or before my heirs arrive at age and the trust is not wound up, then it is my desire that the Chancery Court appoint a suitable Trustee to carry out the trusts herein created.

"And in the event it should become necessary to change the investments or sell any or all of said residue estate, I leave the same to the discretion of my trustee and authorize and empower him to sign all deeds and conveyances necessary to deliver a good title.

"In witness whereof, I have signed my name on this the —— day of ————, 1929.

"_____

"Signed by the Testator, Len Taylor, as his last Will and Testament, in the presence of us, who at his request and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses.

"_____

"_____"

Under the judgment of the Circuit Court in this case, the above-quoted script is not the will of Len Taylor, deceased, but, as a convenient method of identification, we shall refer to it as the will, and shall sometimes refer to Len Taylor as the testator.

The testator had but one sister, viz: Mrs. Virginia A. Hodge, one of the contestants herein; hence she is the "sister" mentioned in the second, fifth and sixth items of the will.

Gene (or Jean) Taylor, the legatee in the third item of the will, is

a grand-niece of the testator; that is to say, she is a minor daughter of J. C. Taylor, Jr., and he is a son of the proponent J. Clark Taylor, Sr., a brother of the testator.

"Brown's children," to whom the bequest in the fourth item of the. will was given, are children of Brown Taylor, who was a son of the proponent J. Clark Taylor, Sr.

The above quoted paper writing was propounded in this case as "the last will and testament of Len Taylor, deceased, valid and effective only as to his personal estate, but not valid as to his real estate."

It may be well to preface our disposition of the assignments of error with a statement of some general principles of law applicable to the facts of this case.

In the case of Joseph Howell, Executor, v. Hugh C. Moore et al., Davidson County Law Docket,—opinion June 11, 1930,—we said: "In Tennessee there is no statute on the subject of wills of personalty, hence the common law is applicable to them, and it follows that a will inoperative to convey real estate for the want of the requisite formalities may be good to bequeath personal property;" citing McLean v. McLean, 6 Humph., 451, 453, 454; Reagan v. Stanley, 11 Lea, 316, 325; Orgain v. Irvine, 100 Tenn., 193, 199, 43 S. W., 768; 1 Woerner (3 Ed.), sec. 42, p. 111. On this proposition, see also Guthrie v. Owen, 2 Humph. 201, 217, 36 Am. Dec. 311, and Davis v. Davis, 6 Lea, 543.

As a general rule, a will of personal estate is required to be proved by two witnesses, although it is not required that they be subscribing witnesses. "If a testator say he has made his will, and it is in the possession of a particular person, proof of such declaration, coupled with the evidence of the witness in whose possession it was, will be sufficient." Suggett v. Kitchell, 6 Yerg., 424, 428; Moore v. Steele, 10 Humph., 562, 565; Franklin v. Franklin, 90 Tenn., 44, 16 S. W., 557; State ex rel. v. Goodman, 133 Tenn., 375, 404, 181 S. W., 312.

It is not necessary that two witnesses should prove the fact of the execution of the paper. It is enough that the proof made by two or more is equivalent to that. Two witnesses. are not required to each particular fact, or to everything necessary to a complete testament. The one may prove the making or contents, and the other some previous declarations, subsequent recognitions, or other extrinsic circumstances tending to corroborate the act itself. Johnson v. Fry, 1 Cold., 100, 102, 103; Sizer's Pritchard on Wills, sec. 9.

"Under the old law, previous to the passing of the Wills Act (1 Vict., c. 26), a will if reduced to writing during the life time and by the direction of the testator was sufficient for the disposition of his. personal estate, though it had not been signed and was never actually

seen by the testator. And no authentication of an attestation was required in the case of a will of personal estate.'' 1 Jarman on Wills (6 Ed.), pp. 102, 103, Star p. 77.

An unsigned and unwitnessed writing purporting to be a will of both real and personal property may be probated as a will of personalty in Tennessee, if it be shown that such writing expressed the testamentary intentions of the decedent at the time it was written, and that he adhered to such intentions until his death, or until he become unconscious or otherwise mentally incapable of signing a will. Guthrie v. Owen, supra, and Note to that case, 36 Am. Dec., 316; McLean v. McLean, supra; Orgain v. Irvine, supra.

> ''In order to make a paper the last will and testament of a deceased person, at the time it is written, it must appear that such person possessed the animus testandi, at that time. A paper, although not a last will and testament at the time it is written, may be made such afterwards, by adoption. A paper, though intended merely as instructions, or a memorandum to enable the scrivener to prepare a will, if the more formal act be left unfinished, may be made a will, by any act which the law pronounces to be the act of God: 2 Ecc., 188. There must, however, be a continuance of the intention of the deceased, down to the time when the act of God prevented the execution of the formal instrument. An immediate, sudden death is not required, if according to the proof, the jury are satisfied, that there was no change of intention, in regard to the provisions of the will.'' Boofter v. Rogers, 9 Gill (Md.), 44, 52 Am. Dec., 680, 683.

The presumption of law is against the testamentary character of an instrument neither written nor signed by the deceased; but if such a paper is complete in itself as to its provisions, and is sufficiently proved, it may be admitted to probate as a will. Sizer's Pritchard on Wills, sec. 9; Reagan v. Stanley, supra, p. 325.

''It has been seen that while a will of personalty need not be signed by the testator or subscribed by witnesses, the presumption of law is against every paper not actually executed by the testator. But if the paper be complete in all other respects, the presumption is slight and feeble, and one comparatively easy to be overcome, as by its being satisfactorily shown that the non-execution of the paper may be justly ascribed to some other cause than the abandonment of the intention therein expressed.'' Sizer's Pritchard on Wills, sec. 22. Accordant: Guthrie v. Owen, supra, p. 216; McLean v. McLean, supra, p. 455; Crutcher v. Crutcher, 11 Hump., 376, 385; Orgain v. Irvine, supra, p. 201.

An issue of devisavit vel non is within the ''settled and inflexible'' rule of the appellate courts that the verdict of a jury will be allowed

to stand if there is any testimony in the record to sustain it, unless there be error in matters of law. Crutcher v. Crutcher, supra, p. 388; Nailing v. Nailing, 2 Sneed, 630, 632. This means "some evidence of a material or substantial nature." The "scintilla rule" does not obtain in Tennessee. Brenizer v. Railway, 156 Tenn., 479, 484, 3 S. W. (2d), 1053; Fitch v. American Trust Company, 4 Tenn. App. R., 87, 94.

The proponents have presented nineteen assignments of error which we shall consider in the order that seems to us most convenient, rather than in the order of their assignment.

Through their fourth assignment, the proponents say there is no evidence to sustain the verdict; and in support of this assignment they insist that they proved by Hugh Lee Webster that he wrote the will in question at Len Taylor's request; that Len Taylor read and approved it, item by item, and then directed that it be typewritten, stating at that time that he would be back, with his witnesses, to sign it; that this was late on Friday afternoon September 27, 1929, and he (Webster) was away from his office practically all of the time thereafter until the following Wednesday, when he learned of the illness of Len Taylor and visited his home, but the nurse would not permit him to see Taylor. On the following day (Thursday) he was admitted to the sick room, but Len Taylor did not seem to recognize him, and, according to Webster's testimony, he (Taylor) was then not "in condition to attend to any business."

We find that the aforestated testimony of Hugh Lee Webster is corroborated in material respects by the testimony of five other witnesses, viz: Webb Thomas, Dr. George Williamson, Newt Gambill, J. C. Taylor, Sr., and Norman Batts.

It is insisted for proponents that "there is no evidence anywhere in the record showing that anyone had heard Len Taylor express any dissatisfaction with his will, which all agree he said he had written." If this, with all it connotes, be the true state of the record, the proponents were entitled to a verdict in favor of the will, for the evidence introduced by the proponents, standing alone, fulfilled the requirements of the law with respect to the quantum of proof necessary to probate an unsigned and unwitnessed will of personalty.

It should have been stated, in connection with the proof in chief of the proponents, that the record shows that, several years before his death, Len Taylor had much litigation with the children and grandchildren of his deceased brother, Sam Taylor, concerning the estate of an Uncle, John Taylor; and Hugh Lee Webster testified that Len Taylor stated to him that he "didn't intend that they should have a nickel of his money since they had cost him so much," and had "caused him trouble and cost of attorneys' fees and litigation;"

and this attitude and feeling of Len Taylor toward the contestants (except Mrs. Hodge) was corroborated by the testimony of other witnesses.

We also omitted to state, in its proper connection, that Hugh Lee Webster testified that, in the course of the preparation of the will, Len Taylor discussed the question of devising his farm on the Highway to Brown Taylor,—stating that he had that in mind when he bought the place,—but "he decided specifically to let it all go in the trust fund."

It is argued in support of the verdict that there was an abundance of time and opportunity for Len Taylor to have executed the will if it was completed, and that his failure to do so was conclusive evidence that he had abandoned his purpose to make the will as thus formulated. We cannot agree to this contention. The delay was merely a circumstance which the jury might consider, in connection with all the other facts and circumstances disclosed by the evidence, in determining whether the testamentary purpose embodied in the will approved by Len Taylor on September 27, 1929, was thereafter abandoned by the testator, or continued until the act of God intervened. Where it is alleged that the formal execution of the will was prevented by the act of God, it is not necessary to show immediate or sudden death, if the jury are satisfied that the paper contains the wishes of the deceased, that the testamentary purpose continued until the act of God intervened, and that the delay was from convenience and not from hesitancy. Pritchard on Wills, sec. 209.

The foregoing statement of the law taken from Pritchard on Wills was approved in Orgain v. Irvine, supra, pp. 201, 202.

We shall have occasion to again advert to this question of law when we come to dispose of certain of the assignments of error leveled at the charge of the trial judge to the jury.

It is also insisted for contestants that the jury could have found from the testimony of Mrs. Bucknau, John Cavender, and perhaps other witnesses, that Len Taylor changed and altered his intentions with regard to the provisions of his Will after he approved the Will as drawn by Hugh Lee Webster on Friday, September 27, 1929. Mrs. Bucknau testified to statements of Len Taylor made to her in the evening of Monday, September 30, 1929, to the effect that Sam Taylor's children would share part of his (Len Taylor's) estate; that Brown (Taylor) "gets the place out yonder" (referring to Len Taylor's farm on the Jackson Highway), and that he wanted to provide in his Will that Sam Yokley's family should "have an inheritance."

Such statements by Len Taylor, if made after his approval of the Will as prepared by Hugh Lee Webster on September 29, 1929,

manifested a change of his intentions with regard to the provisions of his Will, and afford evidence of an abandonment of the testamentary purpose disclosed by the Will now propounded.

The credibility of the witnesses was a matter for the jury to determine, and, for the purposes of this appeal, the verdict has settled all conflicts of testimony in favor of the contestants. We conclude, therefore, that there is evidence to support the verdict, and the fourth assignment of error is overruled.

The fifth assignment sets out the second, third and fourth grounds of the motion for a new trial below, and asserts that the trial court erred in overruling said three grounds of the motion. Each of these three grounds of the motion is predicated upon the preponderance of the evidence, and therefore, does not present a question which this Court can consider. Railroad v. Abernathey, 106 Tenn., 722, 728, 64 S. W., 3, and other cases there cited.

The sixth assignment is based on the exclusion of certain testimony of Dr. George Williamson, as quoted:

"Q. 17. Under all the circumstances, Doctor, state whether you would have allowed him to attempt to execute any Will there?

"MR. SEAY: That is objected to as leading and suggesting and as being irrelevant for the reason it didn't rest with the doctor to allow him or not to allow him.

"Q. 18. Would you have allowed him or not to be bothered with business?

"MR. SEAY: Objected to for the same reason.

"A. Well, I wouldn't allow any patient in his condition to transact business.

"Objection of Mr. Seay sustained, and exception noted by the plaintiffs."

We think it obvious that the method indicated by these questions and the answer to question 18 was not the proper way to prove that Len Taylor was not competent to make a Will.

So far as question 17 is involved, the assignment must be overruled because the record does not show what the witness would have said if he had answered the question. The sixth assignment of error is overruled.

The seventh assignment is that the Court erred in charging the jury as follows:

"The law is that when a man commences a Will and does not finish it, or if the Will is complete in every other respect but is not signed by the man, the legal intendment or presumption is that he had abandoned the Will and therefore, that the paper writing in that unfinished state was not his Will; but this presumption, like all other legal presumptions, might

be repelled and rebutted by proof. The presumption would be repelled by proving the testator had suddenly died before he had had time to complete the Will or it would be repelled by proof showing that the testator could not write himself or had engaged another to write his Will for him and the person he had engaged to write his Will stopped before it was finished to attend to some business of his own with the understanding that he would within a reasonable time complete the Will. In such cases the jury should be satisfied that the Will so far as it had been finished was the final fixed purpose and resolution of the testator."

This instruction was misleading with respect to the strength of the presumption in the case of a Will complete in every respect except that it lacked the signature of the testator and the attestation of subscribing witnesses, as in this case.

In such case, the presumption is slight and feeble and one comparatively easy to be overcome, as by its being satisfactorily shown that the non-execution of the paper may be justly ascribed to some other cause than the abandonment of the intention therein expressed. Sizer's Pritchard on Wills, secs. 22 and 209, and cases there cited.

The eighth assignment is that the Court erred in charging the jury as follows:

"If the proof showed the finishing the Will, and that the signing and execution had been put off for the testator to reflect and deliberate further, that view presupposes that he had not come to a final resolution, and the paper writing would not, therefore, be his will."

The proponents say that this instruction was error because there was no proof whatever that the postponement of the signing of the Will was for further reflection and consideration. The contestants admit, on the brief, that there is no direct testimony that Len Taylor deferred the execution of the Will for further reflection and consideration, but they say that the circumstances show that he did want to reflect upon the matter before executing the Will.

The testimony of Mrs. Bucknau tended to show that, on Monday evening, September 30th, Len Taylor "had not come to a final resolution," and was deliberating further, with respect to the provisions of his Will. This afforded a sufficient basis for the instruction criticized by the eighth assignment of error.

The ninth assignment is that the Court erred in charging the jury as follows:

"I will now direct your attention to two propositions; first, it will be necessary for you to consider whether or not sufficient proof has been offered to set up and prove an unsigned Will as insisted in this case. Second, was the paper writing completed

or had the testator temporarily or permanently abandoned the signing and execution of said paper writing.''

This was merely a preliminary statement directing the attention of the jury to the two issues which they were to determine, and we see no error in it. We do not think (as argued on behalf of proponents) that it contains an erroneous suggestion of the presumption of abandonment.

The tenth assignment is that the Court erred in charging the jury as follows:

''In case of an unsigned will without subscribing witnesses, in order to be valid, the fact of the execution must be proven by the testimony equivalent to two or more witnesses. Two witnesses are not required to prove each particular fact in the execution of a will of personalty or to prove anything necessary for a complete testament. One may prove the making and the other may prove some previous declaration, subsequent recognition or other extrinsic circumstances tending to corroborate the act itself.''

We are of the opinion that this is a correct statement of the law, supported by authorities hereinbefore cited.

The eleventh assignment is that the Court erred in charging the jury as follows:

''So that in this case if you should find that Hugh Lee Webster testified to all the facts attending and surrounding the writing of the purported will, then his testimony alone would not be sufficient to prove the will as required under the law, and it would be necessary that other testimony equivalent to the testimony of another witness should be offered or, in other words, that the execution of the will should be proven by testimony equivalent to the testimony of two witnesses. In this case if the testimony offered is insufficient in this respect to establish the will, then you would find for the defendants, against the will, and it would not be necessary for you to consider the case further. However, if you find the evidence sufficient upon this point to prove the paper writing, then you would go further and consider the second proposition above referred to.''

This instruction followed *immediately* after that part of the charge copied into the tenth assignment, supra, and we think it was a sound instruction. Suggett v. Kitchell, supra; Johnson v. Fry, supra.

The twelfth assignment is that the Court erred in charging the jury as follows:

''In regard to this second proposition it is insisted by the proponents, J. Clark Taylor, executor, et al., that the said Len Taylor was prevented from signing said will by the act of God; that is, surrounding circumstances, sudden sickness and death.

The defendants deny this and insist that the said Taylor was not prevented from signing said Will and having it duly witnessed by surrounding circumstances, sudden sickness and death, but that the preparation and completion of the will was temporarily or permanently abandoned for further meditation and reflection, and that during the delay death occurred. I instruct you in regard to this that in order to make the will valid that it must appear that the paper writing was completed and that for some reasonably necessary purpose the signing was postponed and that under all the circumstances the copying and delay was a reasonable interruption of the continuous process of completing the execution of said paper writing, and if while during this reasonably necessary delay the said Len Taylor was seized with a fatal illness and that during such final sickness he was not in a condition, physically or mentally, to sign and to execute said will, considering all the surrounding facts and circumstances, then the will would be valid so far as this question is concerned. However, if after the preparation of the paper writing in the office of the said Hugh Lee Webster it was not reasonably necessary to further delay the copying, the signing and the witnessing of the said Will, but you find that for some unnecessary cause the further execution of the will was abandoned and that there occurred a reasonable opportunity or opportunities under all the surrounding facts and circumstances for the said Len Taylor to sign and execute said will, either before he was taken sick or during his sickness, and that he was physically and mentally able to do so, and he neglected to take advantage of his opportunities but abandoned temporarily or permanently the signing and witnessing of said will until he should recover, and death ensued, then the failure to sign and execute said will under these circumstances would render said paper writing invalid and insufficient as the last will and testament of the said Len Taylor, and you should find against the will.''.

The "second proposition" mentioned in the first sentence of the last quotation of the charge refers to the "second" of the two "propositions" stated in the excerpt from the charge quoted in the ninth assignment, supra, viz: "Was the paper-writing completed or had the testator temporarily or permanently abandoned the signing and execution of said paper-writing."

In that part of his charge criticized by this (the twelfth) assignment the learned trial judge fell into error prejudicial to the proponents. It makes the case turn upon the question as to whether the delay was or not "reasonably necessary," or, in effect, upon the diligence or negligence of Len Taylor. Under this charge, the

jury could find against the will, and at the same time find that Len Taylor did not change his purpose, but at all times after he adopted the will in Hugh Lee Webster's office on September 27, 1929, he adhered to the testamentary disposition of his property made thereby. The precise question here presented was the subject-matter of a ruling by the Supreme Court of North Carolina (opinion by Chief Justice Ruffin) in the case of Gaskins v. Gaskins (1842), 3 Iredell, 158. In that case an unsigned and unwitnessed paper-writing was propounded as a will of personalty, and an issue of devisavit vel non was made up and tried, resulting in a verdict against the will propounded. On appeal, the Supreme Court, in its opinion, said:

"It is certain, here, that the alleged testator did not deem this a finished paper, but purposed further to execute it, by signing, and having it attested; and, as he died without doing either, the paper is prima facie not a will, for want of publication. This deficiency the propounders of the paper endeavored to supply by proof, that it was written during the party's last illness by a friend, read over to the supposed testator, when he had undoubted capacity, and was fully approved by him and left with him, and that he then said he would send for two of his neighbors and get them to attest it; and that two days afterwards, he sent for two persons, who went to him some time in the night, and found him ill in bed, but in possession of his mental faculties, and were then told by him, that he wished them to witness this paper as his will; but he said it was then night, and he would sign it in the morning, and get them to witness it. During that night the party became suddenly speechless and insensible, and so continued until he died, two days afterwards. Upon these facts, his Honor delivered it as his opinion to the jury, in substance, that although the paper contained all the dispositions the deceased intended to make of his estate, and, therefore, would be a good will of personalty, if the execution of it by signing and attestation, was prevented by the sudden visitation of God; yet, that the voluntary postponement of the execution for convenience or other cause, not amounting to an unavoidable or overruling necessity, and the death of the party interposing, would not constitute such a providential interference or visitation of God, as would dispense with the intended completion of the paper. The question brought up by this appeal is, whether this instruction be right or not. The court has duly considered it, and the result of our deliberation is, that in reference to this case, as stated, the latter part of the instruction is erroneous.

"His Honor yields, and, undoubtedly, he correctly yields, that this paper, which is complete in all other respects—disposing

of all the party's estate and nominating executors—may be pronounced a will of personalty, notwithstanding the want of execution, provided the execution was prevented by the act of God. In such cases, indeed, it must be clear, that the contents of the paper were perfectly understood, and satisfactory; and that the execution was not postponed from any hesitation upon that head. As Sir John Nicholl said, in Scott v. Rhodes, 1 Phillim., 12, the rule is held strictly and must be applied with firmness, that the proof must also show a continuance of intention to execute, down to the time when the act of God intervened and prevented. But supposing such a continuance of intention, there is no doubt, we think, that a paper may be established, the execution of which was ultimately prevented by the act of God, although the party was not prevented by unavoidable accident or overruling necessity, from previously executing it. The question, really is not, whether in any case the paper was written, or the party could, speaking physically, have executed it, at an earlier or a later day, as determining in themselves the validity of the instrument, but it is, whether he postponed the execution because he was deliberating—which is the natural presumption, generally—or whether, still intending to execute it, he was, at last, prevented from performing that intention by sudden death, or the act of God, as it is called. If the latter be the truth of the case, the paper is deemed a will in the law of testaments, without formal execution, upon the principle that the act of God hurteth no man. It being conceded in reasoning of his Honor, that the deceased adopted the paper fully, when prepared, and that he intended to execute it as his Will, up to the time when he last spoke of it, a few hours before his death, we cannot agree that his death, following so suddenly afterwards, did not sufficiently account to the jury for the want of execution, by attributing it to that cause, namely, his death, and no other. Where the intention to execute is brought down so low, almost in articulo mortis, and nothing appears to denote a subsequent change of purpose, it furnishes the strongest argument and evidence that the intention lasted as long as life, and that both were terminated by the same event. Upon these grounds, the Court dissents from the position, that the execution could not be dispensed with, inasmuch as the deceased had the possession of the paper and the ability to execute it, and without any absolute necessity, but for convenience, postponed the execution to the next morning, the party dying during the night. We think, on the contrary, that it should have been left to the jury upon this evidence, which was very strong, to say whether the party would have executed the paper the

next morning, had he lived to that time and been able; and they should have been directed, that, if they so found, and, consequently, that the execution of the paper was prevented by death, then they should pronounce for the paper as a Will of personalty.

"It will thus be seen, that the difference between the instructions given, and those which this Court thinks ought to have been given, turns upon the sense in which the phrase, 'Act of God' is to be received, as applied to questions of this sort. His Honor held, that if the party could have executed the paper, it was not a case of prevention by the 'Act of God;' whereas the true meaning seems to be, that, if the party would have executed his will but for death, it is then considered that he was prevented only by death, or, in other words, by the 'Act of God.' This is very fully stated by the same eminent ecclesiastical Judge, Sir John Nicholl, in Allen v. Manning, 2 Addams, 490. He says, 'that to constitute a case of prevention by the "Act of God," it is not necessary that a case of physical prevention should be made out. In the case in question, for instance, it is not necessary to be shown that it was actually, or even morally, impossible for the deceased to have gone to Hull's office on the 12th of December. If the Court is convinced, upon the evidence, that he was prevented from going by extrinsic circumstances, of such a nature as to render his failure to keep his engagement with Hull (to go to his office and execute his Will), not justly imputable to any change of intention on his part, the exigency of the law, in the particular in question, is fully satisfied. I think the fair result of the evidence is, that the deceased was solely prevented by the "Act of God," in this sense and construction of the phrase, from executing the Will.' Accordingly, there are many cases in which probates have passed, where the party was prevented from executing by death, but might have easily done it before. In the Goods of Taylor, 1 Hagg, 641, the case was very much the same with the present. A paper was prepared at the testator's request the day before he died, and while he was very ill, was read over to him, and approved by him; but he deferred signing it until the next morning, when he died without having executed it. The Court said, 'this is an ordinary case of prevention by death; there was no hesitation as to the contents; the execution only was postponed until the following morning.' So in the case of Scott v. Rhodes, the Court pronounced in favor of a paper, written by the testator himself, as supposed on the day before his death, and not executed by reason, as inferred, of his sudden death that night or early next morning.

And in Allen v. Manning, the paper had been written by a solicitor on the 10th of December, and the testator appointed to come the next day and execute it, but he did not, owing to some slight indisposition, which made it imprudent for him to go out three or four days, and he was then taken violently ill and died on the 16th of December, without executing it. The cases of Hoby v. Hoby, 1 Hagg, 146, and In Re Harvey, Id. 575, are yet stronger, because longer time intervened and the parties had more opportunities for execution. So the Court thinks it thoroughly settled in the law of England, and thence brought as the law of this State, that this paper cannot be held not to be a Will, merely for the want of execution under the circumstances stated. On the contrary, so far as depends on this point merely, if the jury should think the party would have executed the paper the next morning, if God spared his life and senses that long, we think it as much his Will, as if he had lived until next morning, and actually signed it.''

The principle announced in Gaskins v. Gaskins, supra, was adopted by the learned Author of Pritchard on Wills (see sec. 209), and approved by our Supreme Court in Orgain v. Irvine, supra, (pages 201-202), where the Court quotes from Pritchard on Wills, sec. 209, as follows: ''When, however, it is alleged that the formal execution of the Will was prevented by the act of God, it is not necessary to show immediate or sudden death, if the jury are satisfied that the paper contains the wishes of the deceased; that the testamentary purpose continued until the act of God intervened, and that the delay was from convenience and not hesitancy.''

The thirteenth assignment is that the Court erred in charging the jury as follows:

''The failure of the said Len Taylor to sign the Will and have it witnessed caused by his own neglect or failure to act with reasonable diligence, or a delay for further consideration, would not be a failure to sign caused by the act of God, within the meaning of the law, and if he failed to sign and have it witnessed for any of these reasons, then you will find against the Will.''

The fourteenth assignment is that the Court erred in charging the jury as follows:

''A failure to sign must arise from act of God as heretofore explained, interrupting the orderly process of the preparation and execution of the will, and if the act of God so intervenes then the paper writing would be a valid will in so far as this proposition is concerned.''

The thirteenth and fourteenth assignments, supra, are leveled at two connecting paragraphs of the charge which immediately follow that part of the charge copied into the twelfth assignment, supra,

and the thirteenth and fourteenth assignments are well made for the same reason as the twelfth assignment.

The fifteenth assignment is that the Court erred in charging the jury as follows:

"You will also consider the property owned by the said Len Taylor, his relatives and the objects of his bounty and all the other surrounding facts and circumstances."

We see no error in this instruction. At any rate, we do not see how it could have harmed the proponents, and we are forbidden to reverse for harmless error. Public Acts of 1911, ch. 32.

The sixteenth assignment is that the Court erred in charging the jury at the request of contestants, as follows:

"I further charge you, gentlemen, that if you find that the alleged testator, Len Taylor, talked to his physician on the day he was stricken with his last illness, and you find further that he was on that day or any subsequent time before his death able to have completed his will by signing his name thereto and requesting persons to witness it, so that it would be a valid will under the law, and you further find that he was able to sign checks and did sign checks, and you find that he was able to transact business matters, and did transact business matters, after he was stricken with his last illness, you should consider all these facts and circumstances to determine whether or not Len Taylor after he was sick in his last illness was able to have completed his will by signing it and having it witnessed, and you will consider all the facts and circumstances revealed in the proof."

This was error prejudicial to the proponents, as it made the case turn on the question of "whether or not Len Taylor after he was sick in his last illness was able to have completed his will by signing it and having it witnessed," rather than upon whether he had changed his intentions with respect to the testamentary disposition of his property after he had adopted the will prepared by Hugh Lee Webster.

The seventeenth assignment is that the Court erred in refusing to give in charge to the jury the proponent's request No. 1 as follows:

"If the paper writing offered expressed the will of Len Taylor and was completed at the time it was written and this will was not abandoned by Len Taylor, and he intended and wanted to sign it up to the time he died or finally became unconscious and he was prevented from signing it because he could not find Hugh Lee Webster, then you should find for the proponents."

And the eighteenth assignment is that the Court erred in refusing to charge the proponent's request No. 2 as follows:

"If the paper writing offered expressed the wishes of Len Taylor as his last will at the time it was reduced to writing and was not abandoned by him but adhered to as his last will up to the time he died or finally became unconscious, then you should find for the proponents."

It was error to refuse these two instructions requested on behalf of proponents, for they embody correct statements of law applicable to the facts of this case which were not given to the jury, except with qualifications already held to be erroneous.

Through their nineteenth assignment the proponents say that "the charge of the Court as a whole is involved, contradictory and confusing and stresses some points in the evidence to the prejudice of the plaintiffs, and instructs the jury to consider certain facts of which there is no evidence at all."

This assignment is too general. It is conceivable that a case might arise wherein such an assignment would be appropriate, but in this case the errors have been pointed out by specific assignments, and there is no occasion for such general assignment.

Recurring now to the first assignment: It is that the Court erred in overrulind the motion of the proponents to strike out the first, third, fourth, fifth, sixth, eighth, ninth and eleventh pleas of the contestants.

The proponents assert that some of these pleas do not tender issues of fact, but merely raise issues of law; that some of the pleas are bad for duplicity; and that the eleventh plea "is a gathering together of all the other pleas and is a regular argument to the jury, and is extremely bad."

There is no occasion to further extend this opinion by a discussion of the merits or demerits of the contestants' pleas, for we think the trial judge removed all possibility of confusion in the minds of the jury as to the real issue when he charged the jury as follows:

"While there is a large number of averments in the long declaration and pleas, when reduced to the real issue they simply submit to you the question as to whether or not this paper writing is or is not the last will and testament of the said Len Taylor." This, in its practical effect, was equivalent to striking out all the contestants' pleas save one, viz: that the paper writing propounded is not the last will and testament of Len Taylor, deceased.

The second assignment of error is identical with the sixth assignment, and is overruled for the same reason heretofore stated in disposing of the sixth assignment.

The third assignment is that the court erred in overruling the proponents' motion for a new trial.

This assignment is too general. Reasons why a new trial should have been granted must be specified. Thurman v. Bradford, 3 Hig., 474; 2 Ency. Pl. & Prac., p. 953.

Moreover, in the instant case, the proponents get the benefit of the several grounds of their motion for a new trial by separate assignments of error in this court.

This disposes of all the assignments of error. The first, second, third, fourth, fifth, sixth, eighth, ninth, tenth, eleventh, fifteenth and nineteenth assignments of error are overruled; but the seventh, twelfth, thirteenth, fourteenth, sixteenth, seventeenth and eighteenth assignments are sustained, and for the errors pointed out in the latter seven assignments the judgment of the Circuit Court is reversed, the verdict of the jury is set aside, and the cause will be remanded to the Circuit Court of Maury county for a new trial.

The costs of the appeal will be adjudged against the contestants, and the costs accrued in the Circuit Court will await the future judgment of that court.

Crownover and DeWitt, JJ., concur.