TEVIS v. PROCTOR & GAMBLE DISTRIBUTING CO.—113 S. W. (2d) 64.

Eastern Section. July 3, 1937.

Petition for Certiorari denied by Supreme Court, February 12, 1938.

Hartman, Hartman & Doughty, of Knoxville, for plaintiff in error.
Jennings & O'Neil, of Knoxville, for defendant in error.

AILOR, J. Paul Tevis filed his original action for damages for personal injuries against Proctor & Gamble Distributing Company and J. G. Crihfield in the Second circuit court of Knox county. He sought a recovery in the amount of $50,000 on account of personal injuries received on the night of March 6, 1936, as a result of being struck by an automobile owned by Proctor & Gamble Distributing Company and driven by J. G. Crihfield at the time of the accident while in the discharge of his duties as an employee of said company.

The first trial of the cause resulted in a mistrial. The second trial was finished on Friday, February 5, 1937, but the jury not having time to finish its deliberations on that date, it was respited until Monday, February 8, 1937. At the conclusion of its deliberations the jury returned a verdict in favor of the defendants, and the plaintiff's suit was dismissed. Thereafter plaintiff filed his motion for new trial in due course, and the same was overruled on March 6, 1937. The order denying motion for new trial was not entered at the time it was made, but on March 20, 1937, a nunc pro tunc order was entered as of March 6, 1937. This order allowed plaintiff 45 days within which to prepare and file both appeal bond and bill of exceptions. On April 19, 1937, the time for filing bill of exceptions was extended until April 30, 1937. And bill of exceptions was filed on April 29, 1937, or within the time as extended.

An appeal bond was filed April 17, 1937, 42 days from March 6th, the day upon which the court acted upon the motion for new trial, but less than 30 days from March 20th, the day upon which the nunc pro tunc order went to record. It is now insisted that the appeal bond was not filed within the time required by the statute, and that this court acquired no jurisdiction of the attempted appeal. This insistence is based upon the theory that the court could not grant more than 30 days for the filing of an appeal bond under the provisions of the statute, and that the appeal bond was not filed within 30 days from the making of the order overruling motion for new trial and granting an appeal.

This question has been before this court and the Supreme Court in various forms on numerous occasions, and while there is no question about the rule, it is sometimes difficult of application. It involves a consideration of the provisions of section 9047 of the Tennessee Code of 1932, which is as follows:

"When an appeal or appeal in the nature of a writ of error is

prayed from a judgment or decree of an inferior court to the court of appeals or supreme court, the appeal shall be prayed and appeal bond shall be executed or the pauper oath taken within thirty days from the judgment or decree, if the court holds so long, otherwise before the adjournment of the court, but for satisfactory reasons shown by affidavit or otherwise, and upon application made within the thirty days, the court may extend the time to give bond or take the oath in term or after adjournment of the court; but in no case more than thirty days additional."

Mr. Justice Swiggert discussed this question most ably in the case of Physicians' Mutual Health & Accident Insurance Co. v. Grigsby, 165 Tenn., 151, 53 S. W. (2d), 381, 382, in which, among other things, it was said:

"If the court holds as much as thirty days from the date of the rendition of a judgment, the circuit court is authorized by statute to extend the time for the filing of an appeal bond for an additional thirty days, making a maximum period of sixty days for the perfecting of an appeal by the filing of bond, as held in England v. Young, 155 Tenn., 506, 296 S. W., 14."

 In the case before us the court verbally overruled the motion for new trial on March 6, 1937, but the order was not in fact entered of record on that date. And no order was entered of record until March 20, 1937, at which time the court still had authority to grant additional time not exceeding 30 days. The order as entered on March 20th attempted to allow appellant 45 days' time within which to file his appeal bond. And while it is insisted by appellee that this time is to be computed from the time of the making of the verbal order overruling motion for new trial, we do not think this insistence can be sustained. To give effect to this insistence would be to say that 14 days of the time allowed had already expired. There is nothing in the record to indicate that the court intended to so limit the time for appeal. On the contrary, we think a proper construction of the order entered would indicate that the court intended to give plaintiff in error 45 days from the entry of the order. And while the court was without authority to grant more than 30 days from the entry of the order, we think the order granting 45 days was sufficient to give the 30 days within the power of the court. And since the bond was filed within 30 days after the entry of the order, we think the motion to dismiss is not well taken, and that it must be denied. We think the filing of an appeal bond less than 30 days after the entry of an order granting 45 days is sufficient to transfer the case to this court, and that this court has jurisdiction to review the record. The order as entered was valid to the extent that the court had jurisdiction as to the time allowed, and invalid only to the extent of the excess time allowed. And we now proceed to an examination of the

questions raised by assignment of errors. But before noticing the several errors assigned, we shall give a brief statement of the facts.

On the night of March 6, 1936, the plaintiff was driving his automobile westwardly from Newport towards Knoxville on U. S. Highway 11E. After crossing the Holston river bridge and traveling a short distance, plaintiff's automobile collided with an automobile owned and driver by a man by the name of Mullins. At the time of the collision the Mullins automobile was being driven in an easterly direction along said highway. As a result of the collision, both automobiles participating in same were disabled, the Mullins car in such position as to block the southern portion of the highway for vehicles, and extending somewhat diagonally across the same. Immediately after the collision plaintiff attempted to move his car off of the highway, and succeeded to some extent in doing so. The rear wheels of the car, which was a large Buick sedan, were off of the improved portion of the highay and the front wheels were on the shoulder of the road on the side opposite from the Mullins car. We think it appears that plaintiff moved his automobile as far as he could in its damaged condition.

After plaintiff had moved his automobile as above set out, he proceeded to try to unload its contents, which was moonshine liquor. While he was attempting to unload the liquor, he was struck by the automobile of defendants. The accident happened about 9 o'clock at night. The facts up to this point are not disputed, but there is some dispute as to certain features of the evidence as to the exact location of the two cars participating in the first collision, the speed of the car of defendants, etc. These matters will be discussed in connection with separate assignments of error by the plaintiff, which we now proceed to consider in their order.

■ ■ It is first insisted that the court erred in not granting plaintiff a new trial because the evidence preponderated in favor of the plaintiff and against the defendant. This assignment presents no question for review in this court. There is no rule of law better settled in this state than that the verdict of a jury is conclusive of questions of fact where there is a conflict of evidence as to the particular fact decided by the jury, and that an appellate court will not pass upon the weight of the evidence or the preponderance of the same. This question was before the Supreme Court in the early case of Van Huss v. Rainbolt, 42 Tenn., 139, 140, 2 Cold., 139, 140, and the rule announced as above set out. The rule has been reaffirmed in numerous cases by this court and the Supreme Court in both published and unpublished opinions. See Brenizer v. Nashville, etc., Ry., 156 Tenn., 479, 3 S. W. (2d), 1053, 8 S. W. (2d), 1099. Also Greenlaw v. Louisville & N. R. Co., 114 Tenn., 187, 86 S. W., 1072.

■ It is next insisted that the court erred in refusing to grant a

new trial, because the verdict of the jury evinced passion, prejudice, and caprice against the plaintiff. Before proceeding to a consideration of this assignment of error, we think it not out of place to observe that there is no assignment to the effect that there is no evidence to support the verdict of the jury, and that this assignment is the only one which would involve a consideration of the evidence. It is not even insisted that there is no evidence to support the verdict, but we are asked to review all of the evidence in connection with this assignment and hold that a proper consideration of all of the evidence established the fact that the verdict of the jury was the result of passion, prejudice, and caprice. In other words, we are asked to accomplish the same results under this assignment that we could not accomplish under the first assignment presented, viz., to weigh the evidence and determine the preponderance of same. As an indication that this is the objective of this assignment in a separate treatment of same, a summary of the evidence of both plaintiff and defendants is given in brief. There is no attempt to point out any specific action of the jury indicating passion or caprice on its part in arriving at the verdict or any other act tending to impeach its verdict to any degree. And any attempt on our part to respond to the merits of this assignment would call for a consideration of the preponderance of the evidence, since no action of the jury other than its verdict after a consideration of all of the evidence is called in question. It is sufficient to say that we do not have jurisdiction to weigh the evidence, but since this insistence is so earnestly pressed, we think it not out of place to call attention to the evidence supporting the verdict of the jury.

There is proof in the record to the effect that plaintiff was driving his automobile loaded with illegal liquor over a stretch of highway covered with loose rock or gravel at a speed or from 75 to 80 miles per hour as he approached the automobile driven by William Mullins; that as a result of the rapid and dangerous rate of speed at which he was driving, plaintiff collided with the Mullins car, wrecking both automobiles and leaving them in such position as to appear to completely block other vehicles traveling in an easterly direction on said highway; that defendant Crihfield, while driving the automobile of Proctor & Gamble Distributing Company in an easterly direction on said highway, approached the point of the said collision between the car of plaintiff and Mullins. That there is a long and rather steep grade in the highway going in an easterly direction and ending some distance to the west of where the collision between plaintiff's car and Mullins' car had occurred. Crihfield was traveling at about 45 miles per hour as he went up this grade, but as he turned over the top he slowed down to about 40 miles per hour. After reaching the top of the grade going in an easterly direction,

there is a very decided grade in the other direction. When Crihfield had passed over the top of the grade and within from 75 to 100 feet of the Mullins car, the lights on his car revealed the presence of the Mullins car, blocking the right-hand side of the highway. The shoulder and bank of the righthand side was cluttered up with piles of gravel, tar barrels, etc., so that he thought it would be unsafe for him to try to escape a collision by turning off of the road to the right. The loose gravel prevented him from stopping before reaching the Mullins car. As he approached in the darkness, it appeared that there was not sufficient room to pass between the Mullins car and the car of plaintiff. The witness Crihfield is corroborated in this by other witnesses who approached the point of the collision while the conditions were the same. Defendants insist that this constituted a sudden emergency created by the negligence of plaintiff, and that Crihfield was not guilty of any actionable negligence, and that the action of Crihfield in driving off of the highway on the left-hand side resulting in the injury to plaintiff while he was in the act of removing a case of liquor from his wrecked car was attributable to the existence of the sudden emergency created by plaintiff and not as a result of any actionable negligence on the part of said Crihfield. As hereinbefore stated, the jury returned a verdict of not guilty as to each of the defendants, indicating an acceptance of the defense of sudden emergency. And, as above indicated, while we are not privileged to weigh the evidence, we think there is an abundance of evidence to support the conclusions of the jury.

Plaintiff offered in evidence testimony of Dr. J. A. Stoechinger as follows:

"When Mr. Tevis first came to see me in regard.to these convulsions, I made a Wasserman test and it was, as I recall, I think one plus positive. In other words, that test alone was no evidence that the man was suffering from syphilis, but because there was a supposition there, and because another physician at one time treated him for a light lesion he had on his urethra, I immediately gave him Salvarsan, without first definitely diagnosing whether this lesion was a syphilitic one or one due to un-hygienic conditions. I assumed, in view of the fact that he had convulsion seizures, that his seizures were of the syphilitic nature, and on that assumption I gave him syphilitic treatment, but when I sent him to Louisville, the written report from the doctor in Louisville to me was ot the effect that he did not consider his condition to be due to syphilis. And upon having confidence in Dr. Glenn Spurling's ability in cerebral spinal conditions, I accepted his viewpoint and abandoned my diagnosis of syphilis entirely."

"There is no one in this city prepared to eliminate this man's condition any further than I could. There is no specialist on brain surgery or diagnosis in our city and as a consequence I sent him to

502

Dr. Spurling of Louisville, Kentucky, who injected air into his brain, followed by X-ray pictures, and together with spinal punctures and other technique or examinations, derived that the diagnosis of syphilis was not a cause of this man's condition, and since there was, at that time, no one else in this state other than Glenn Spurling, I assumed that I was justified in treating this man on the evidence presented. I was giving him what is considered a therapeutic case. I was giving him Salvarsan.''

"I accepted the opinion of Dr. Spurling of Louisville, that they were epileptic."

"After he returned from the visit to Dr. Spurling I no longer held the view that I had before, owing partly to his report and partly due to my own observation, in that he did not respond therapeutically to the Salvarsan, mercury and iodized solution that had been given him."

The trial judge excluded the evidence above, and his action in so doing is assigned as error. We think this assignment must also be overruled. In the first place, we think the probative value of the rejected testimony doubtful. But the testimony offered violates the rule prohibiting hearsay evidence from being introduced, and also the rule requiring the best evidence to be produced. The witness sought to testify to statements of Dr. Spurling, thus violating the rule against hearsay evidence, and he also sought to testify as to the contents of a written report made by Dr. Spurling, thus violating the rule requiring the production of the best evidence. But aside from these specific objections to the introduction of the testimony, we fail to see where it could have aided the cause of plaintiff to any great extent if admitted. As we view the testimony, it would have proved nothing, and its exclusion could not have seriously injured plaintiff.

It is next insisted that the court placed undue emphasis on the defense of sudden emergency relied upon by the defendants, in that the court repeated or referred to this question in whole or in part no less than six times. It is insisted that this repetition led the jury to believe that the court believed that defendant was, in fact, confronted with a sudden emergency, and intended that the jury should consider this question of paramount importance. We fail to find any basis for this contention after an examination of the charge. It is true that the trial judge used the term "sudden emergency" several times, but we think the repetition was only for the purpose of clarification of the issues for the jury, and not objectionable and did not prejudice the rights of the plaintiff. The charge of the court was given in great detail and was exhaustive. When taken as a whole, it represented a fair exposition of the rules of law applicable to sudden emergency, and it results that this assignment must be denied.

The next error assigned deals with the same question based

upon a particular portion of the charge, it being insisted that the court should have qualified his charge on the theory of sudden emergency so as to deny to defendants the right to rely upon the defense of sudden emergency if the negligence of Crihfield created the condition. The charge of the court as given is not objected to, it is only insisted that it did not go far enough. In other words, it is not insisted that the court committed positive error in his charge, but that it was not amplified. We think it a sufficient answer to this insistence to say that the written charge of the court embraces twenty-four typewritten pages, and that all issues are dealt with in great detail. It is well settled that meagerness of a charge without positive error will not constitute grounds for reversal, and we think this rule is specially applicable in the case before us in view of the length of the charge as given. See Cooper v. State, 123 Tenn., 37, 138 S. W., 826.

A trial judge is not required to anticipate and give in charge a full exposition of the law on all questions involved. It is only necessary that his charge be ample and a sufficient guide for the direction of the jury on the issues involved, and it will not be held defective in the absence of positive error. It was the duty of counsel for plaintiff to call the attention of the court to the omission now complained of, if it were deemed to be inadequate to meet the particular facts involved. In the absence of such request, it will be deemed that the charge was satisfactory at the time, and plaintiff will not now be heard to complain. This assignment will be denied.

The sixth and seventh errors assigned also deal with specific portions of the charge which it is claimed is error. It is not pointed out in what particular the language used is erroneous, and, when taken in connection with the charge as a whole, we fail to see wherein any error was committed. The insistence in brief seems to be that these particular portions of the charge are erroneous largely because of their relation to the charge as a whole, and not because of any error inherent in the particular language complained of separate and apart from other portions of the charge. But since it is not pointed out in what particular these two portions of the charge are erroneous, the assignments are insufficient to call for review by this court, and they are overruled.

It is next insisted that the court erred in referring to the fact that the plaintiff was injured while engaged in handling a car of liquor. And while it is freely admitted that the error complained of in this assignment is not sufficient of itself to warrant a reversal of the judgment, nevertheless, it is insisted that it constitutes a part of a jigsaw puzzle, which, when taken as a whole, is sufficient to demand a reversal. As above set out, we have examined the charge as a whole, and we fail to find any such condition as to justify a reversal on the charge of the court. And we might observe that we

think the violation of law by plaintiff had a direct bearing on the accident and injury about which he here complains. In the first place, the initial collision seems to have resulted from the reckless abandon with which plaintiff was transporting a cargo of illicit liquor, and that his position at the time he was struck was brought about by his own negligent acts; that he did, in fact, create a sudden emergency for Mr. Crihfield to face, and the plaintiff's injuries were brought about by his own wrongdoing. And while the possession of the liquor might have been only incidental, we think the jury warranted in finding that the reckless speed with which plaintiff was driving was prompted by his anxiety over his cargo of liquor. In other words, it constituted a circumstance to which the jury could look along with other circumstances. It was a fact proven in the case, and, being such, was open to comment by the court. And unless his comments on this feature of the evidence constituted such positive error as to be prejudicial to plaintiff's rights, then no reversal should be granted for this reason. We fail to find any such prejudice, and this assignment of error is overruled.

The ninth assignment of error complains that the court placed undue vocal emphasis upon the doctrine of "sudden emergency." This assignment cannot be considered by this court. In the first place, there is no way whereby this court may know what vocal emphasis the trial judge employed in charging the jury. It is not made to appear from the record, could not be made to appear from the record, and, consequently, is not subject to review. This court can only review matters appearing in the record, and cannot assume to pass upon the inflection, feeling, or lack of feeling on the part of the trial judge, otherwise than appears from the language used by him in charging the jury. This assignment must be denied.

The tenth, eleventh, and twelfth errors assigned question the conduct of the trial judge in giving the jury a supplemental charge, after it had made a preliminary report that it was unable to reach a verdict. It is insisted that the trial judge coerced the jury into returning a verdict. There is no insistence that the jury was coerced to return a verdict in favor of the defendants, but only that it was coerced into returning a verdict. We think it would unnecessarily prolong this opinion to quote the discourse which took place between the court and a member of the jury relative to the failure to reach a verdict, the possibility of reaching such verdict, and the advisability of same. We think it sufficient to say that the court did indicate a desire that the jury arrive at a verdict. But it is not pointed out wherein this was prejudicial to plaintiff, and we think there is no showing that any such prejudice resulted. It might be observed in this connection that this was the second trial of the case, and that considerable time had been consumed on this second trial. It was

natural that the trial judge would be anxious to get some tangible results from the time and expense of so long a trial. And we think it not improper for the court to impress upon the jury the fact that it was their duty to arrive at a verdict of some character. When properly analyzed, we think the charge of the court complained of went only to this extent, and that it was not objectionable, at least not sufficiently objectionable to constitute grounds for reversal. See 14 R. C. L., p. 750; 64 C. J., p. 590.

It is next insisted that the court erred in refusing to give in charge to the jury plaintiff's special request as follows:

"I charge you gentlemen of the jury that the fact that the plaintiff was transporting whiskey at the time of the accident it was not to be looked to by you in arriving at your conclusions as to liability, that this is admissible only for the purpose of affecting the credibility of the plaintiff. That a person can recover for an injury even tho he was engaged at the time in a law violation."

We think this special request was properly refused. It assumes that plaintiff was, at the time of the receipt of the injuries complained of, transporting whisky, when he was only attempting to unload and conceal the whisky. It is true that the transportation of the whisky was closely related to the time when the injury was inflicted, but it is well settled that a judgment will not be reversed for refusal to give a special request in charge to the jury, unless such special request is strictly accurate. Pennsylvania R. Co. v. Naive, 112 Tenn., 239, 79 S. W., 124, 64 L. R. A., 443.

The provision in the request to the effect, "That a person can recover for an injury even tho he was engaged at the time in a law violation," is not a complete statement of the law applicable to such cases. A person cannot recover for an injury received by him while engaged in violating the law, where such violation of the law was the proximate cause of the injury. In other words, the special request submitted as not a full and accurate statement of the law applicable to such cases, and, failing in this, it was properly refused by the trial judge. And, in addition to this fact, the general charge of the court had particularly charged the jury that plaintiff would be entitled to recover, if his injuries were proximately caused by the negligence of Crihfield. This charge was given without qualification, and sufficiently informed the jury that the fact that plaintiff was engaged in hauling liquor immediately prior to the injury would not constitute a bar to his recovery. This assignment will be overruled.

It is next insisted that the court erred in permitting counsel for defendants, over objections, to read to the jury in toto a certain indictment found by the United States District Court at Lexington, Ky., charging plaintiff and others with violating certain laws of the United States. The record discloses that counsel for defend-

ants was engaged in cross-examining the plaintiff. He was asked if he had not been engaged in purchasing and transporting illicit liquor since the year 1932, and if he had not been indicted in the United States District Court along with other men as a liquor runner. This was objected to as being immaterial, and the objection was overruled. Plaintiff admitted that he had been indicted and found guilty of the charge of transporting whisky. As counsel proceeded with the cross-examination, this question was asked: "Q. There were three counts in this indictment, weren't there, against you—to refresh your recollection let me read it to you: 'The Grand Jury of the United States of America, impaneled —.,'" At this point counsel for plaintiff interposed as follows: "I object to the reading of the indictment." To which the court responded, "Let him ask him." And counsel for plaintiff responded, "Except." Thereafter cross-examining counsel continued to cross-examine the plaintiff, and asked him numerous questions relative to the contents of the indictment. But no further objection was made to the questions or answers. It will be observed that the objection made did not specify any grounds, or point out wherein the question asked was objectionable. And it will be observed that the action of the trial judge went only to the extent of permitting counsel to complete his question. In other words, the trial judge only said, "Let him ask him." The further reading from the indictment for the purpose of refreshing the mind of the witness was not questioned, and the court was not asked to exclude same. No further objection was made. But aside from this the plaintiff admitted the truth of the fact that he was indicted, together with the charges against him and his conviction thereunder. The exception made was general without specifying the ground of the exception, and was insufficient under the rule applicable in this state.

"General exception to the admission of evidence, made on the trial below, will not be noticed in this court." Powers v. McKenzie, 90 Tenn., 167, 16 S. W., 559.

And the objection is insufficient to call for a reversal of the case by this court for the further reason that the facts proven over objection were freely admitted by plaintiff. Our Supreme Court has gone so far as to hold that evidence of the transportation of whisky obtained unlawfully admitted upon the trial of a criminal charge would not constitute ground for reversal, where defendant took the stand and admitted similar facts. See Hood v. State, 148 Tenn., 265, 255 S. W., 51. Also Zachary v. State, 144 Tenn., 623, 234 S. W., 758.

Under this condition the admission of the evidence could have done the plaintiff no injury, and it is well settled that the wrongful admission of incompetent evidence will not constitute grounds for reversal, where it could have done the party complaining no injury.

Ellett v. Embury, 142 Tenn., 444, 217 S. W., 818; Lewisburg & N. R. Co. v. Hinds, 134 Tenn. 293, 183 S. W., 985, L. R. A., 1916E, 420.

We have reached the conclusion that the facts in this case presented questions for the determination of the jury to pass upon, and that the case was submitted to the jury with proper instructions. It is highly possible that the jury was somewhat influenced by the fact that plaintiff was a confessed law violator, but he alone is to blame if the fact that his lawlessness militated against him, and his complaint is not in shape to be translated into any legal benefit at this stage of the proceedings. We are inclined to the opinion that a new trial, if granted, would most likely result in a verdict similar to that before us. However, we are not resting this opinion upon that consideration, but upon the conclusion that no prejudicial error was committed in the cause of the trial warranting a reversal of the judgment. All errors assigned will be overruled, and the judgment of the lower court will be affirmed.

Portrum and McAmus, JJ., concur.