## R. F. COCHRAN v. RUSSELL GAITHER.

Eastern Section. March 3, 1928.

Petition for Certiorari denied by Supreme Court, May 26, 1928.

Bachman & Wilkerson, of Chattanooga, for plaintiff in error.
Tatum & Tatum, of Chattanooga, for defendant in error.

SNODGRASS, J. The plaintiff in error prosecutes this appeal to reverse a judgment for $500 obtained against him by the defendant in error in the court below, as damages for injuries to his foot when the plaintiff in error ran his automobile against him and upon the foot, crushing and spraining it.

The accident occurred while they were all returning from church in North Chattanooga, about eight or nine o'clock at night, and while travelling south on Forest avenue. The defendant in error with a friend was walking south on the left hand side of the paved street, near the gravel, or side of said street. There was no paved sidewalk at that place. He had his arm on the friend's shoulder at the time. His friend was walking on the gravel or side of the street, and he was walking in the street, about a foot from the edge thereof. The plaintiff in error with his wife was driving a Buick sedan and came up behind the two boys, on the side of the street on which they were walking, without sounding the horn or otherwise notifying them of his approach, and just as the defendant in error was taking a step, advancing his right leg forward, the bumper of the automobile struck him about the calf of the left leg, flexing it so that, while he did not fall clear down, it turned

or twisted him so that he fell back against the fender, or partially down, so that the automobile ran up on the bottom of his foot and was stopped thereon, but with the top of the foot and toes on the street, and the left front wheel of the automobile on the sole of the shoe, thus pinning him so that the automobile had to be backed off his foot, which was done, both at the request of himself and his friend.

Afterwards he was taken by the plaintiff in error by his, the injured man's home, and thence on to the doctor, where his foot was dressed.

It was a painful sprain, his foot being also bruised to some extent, and he was incapacitated for awhile; had to stay in bed some ten days, unable to work for about four weeks, the foot remaining in a swollen condition for about five weeks. The boy testified that it gave him pain even then when he put all his weight on his toes, and that he could not walk as well as he used to; that he ran a crane and worked at the Ross-Mehan Company. The injury occurred on a night of September, 1926, and the testimony was being given on February 10, 1927.

The doctor testified that he had a sprained foot at the juncture of the tarsal and metatarsal bones, right across the instep, sprained more than any other portion; that it was just like any other sprain; that it sprained the ligaments and bruised the foot sufficiently to cause swelling for a few days; that he was confined to his bed about ten days; that he told him that after ten days he would let him out on crutches; that he made seven visits in all during this time; that he felt like the injury was sufficient to make these visits, as the swelling would go and come; he would rebandage it up, supporting the foot with adhesive plaster and was watching to see that it did not get too tight, or keep it too tight; that in addition to that the top of the big toe was skinned; that the top skin was scraped off of it; but about the tenth day he was doing so well, and the swelling was alleviated, so that he dismissed him and told him to let him know if he needed him any further. Asked if it continued to give him pain now with putting his weight on the front part of the foot there, if it was likely to continue on in the future to do that, the doctor said: "Not necessarily; sometimes you get traumatism to the nerve trunk that will last several months, or will finally clear up." He further testified that there was not anything in the case that he saw to indicate a permanent injury; that it was just an ordinary, painful sprain, was all he could say.

According to all the testimony plaintiff in error was driving slowly, and could have stopped before striking defendant in error;

or, according to the testimony of the defendant in error, he could have passed to the unobstructed right, with ample room on the paved street, without striking him.

In fact the weight of the testimony is, that without any necessity whatever of so doing, he rolled his car up against him without any warning, while the defendant in error's face was turned away from him to the front and without hearing or observing his approach, thus effecting the injuries indicated.

In fact it looks a little bit from the testimony of the plaintiff in error and his wife that they had become somewhat exasperated at the obstruction of the crowd. The wife admits it as to the obstruction of the boys, but we think such obstruction, if any, should have made the plaintiff in error more careful. While it appears from the proof that the proximity of the automobile was not known to the defendant in error walking with his friend, his presence and position was known to the driver of the automobile, and to say the least of it the driver of the automobile was somewhat indifferent to the peril with which he menaced him.

The declaration, which averred numerous particulars of negligence, covered the case, and asked for damages in the sum of $5000. But upon trial of the issues formed by the plea of not guilty before the judge and jury, there was a verdict returned for $500. His motion for a new trial being overruled the defendant below has appealed to this court, and in addition to assigning that there is no evidence to support the verdict, insists the court was in error in charging the jury as follows:

"Now, gentlemen of the jury, if the greater weight of the evidence in this case shows that Mr. Cochran proceeding along this road, Forest avenue, following church services at St. Marks, ran up behind this young boy, this young man, and struck him, ran his car into him, so that he collided with him and ran over his foot, or upon his foot, and he was hurt, the boy is entitled to recover. That would be the judgment of the law on those facts, if the greater weight of the evidence shows that contention to be true.

"Now, if, on the other hand, you believe that this boy saw the car coming and stuck his foot under the wheel, he cannot recover. Now this is the issue as made here in argument. You go out there and determine the facts."

The charge sufficiently instructed the jury as to weighing the evidence and as to the principle governing their conclusions as to the amount of damages or otherwise, and we do not think there was any prejudicial or reversible error in the excerpt complained of as applied to the facts.

There really was but one issue on the main question of liability. If the accident occurred as defendant· in error insisted that it did, then liability was unquestionable under the facts detailed, and the court told them (whether or not it be error prejudicial to the defendant in error) that if the accident occurred as plaintiff in error insisted it did, then no liability was occasioned.

This cryptic charge brushed aside all formality and verbosity as to negligence and contributory negligence, but it embraced both we think sufficiently. If any amplification was desired it should have been presented at the proper time and in the proper way, and injury cannot be claimed if the court presented in such an all-inclusive way the theories of both parties as to how the accident happened. Plaintiff in error testified:

"I come up there to these two parties in front of the car, which I was driving slowly, and I saw that they did not care about getting out of the street, I thought to myself—

"Mr. Tatum: Not what you thought. I except. Just tell what you did."

"The Court: Yes.

"A. (Continuing) "I ran up there close to them. I was just moving up to the two boys, and stopped, in fact stopped, and the boy, the Gaither boy was on the left hand side, and if I remember correctly his partner was on the right hand side, but in the center or about the center of the bumper. The Gaither boy was on the left hand side of the car and about the edge of the bumper, and about as it happened the Gaither boy turned round. If I may show you, I will stand up.

"Q. Stand up and show us. A. The boy on one side, the Gaither boy here, the car coming in this way. I should judge my bumper struck the boy. The Gaither boy turned around and caught his foot between the bumper and the wheel, and his hand on the fender. By that time he said: 'You are on my foot, back off.' I thought the boy—I know the boy had his hand on the car—

"Q. Talk to the jury. A. He had his hand on the bumper and the car. I don't believe I reversed the car, because he pushed out his foot, and about the same time his foot pulled out, about the same time this all happened."

He testified that his car would not register up to five miles, and he didn't believe it was registering; that he had been making his way through the crowd very slowly, as slowly as a car in motion would go, and that when he got up to the boys they did not make any motion to get out of the way. He was asked:

"Q. State whether or not about the time the car rolled up to them, you stopped when you saw the boys were not getting

out of the way? A. I stopped. The foot must have stopped it, because his foot was under the left wheel.

"Q. What position was his foot in? Was the sole of his foot on the street, or otherwise? A. I could not see, I was in the car."

Here is a concession that he did not stop until he got onto the foot, and that about the time it happened the Gaither boy turned around, though he places the Gaither boy on the left side of his partner instead of the right, which evidently was a mistake. He likewise insists that the boy pulled his foot out and walked out on the left side of the street. On cross-examination he was asked:

"Q. Now you say you saw these boys before you hit them? A. I saw the crowd, separating the crowd on the way through.

"Q. Did you see the boy before you hit him? A. Yes sir.

"Q. How far away was he from you when you first saw him? A. He was right in front of us, and walked several feet.

"Q. Several feet? A. Several feet before he would get out of the road.

"Q. You ran up, you were going slow, not much faster than he was walking? A. No sir, not as fast.

"Q. He had his back turned to you of course? A. His back was turned to me, yes.

"Q. You were coming up behind him? A. Yes sir.

"Q. And going at a rate of speed you could have stopped your car in the space of—almost instantly? A. In one foot.

"Q. You could have stopped your car in a foot? A. Yes, if he had not turned around and put his foot under the wheel there would not have been any accident.

"Q. You say he had his back to you when you hit him? A. I do not know that I hit him.

"Q. Didn't you say the fender struck him? A. I say the fender may have touched him, but I didn't hit him.

"Q. It came up against him at any rate? A. I would not say, I told you awhile ago I didn't even know the fender touched him.

"Q. Were you looking out to see whether he was in front of you or not? A. Yes sir.

"Q. At any rate you didn't run your car up on his foot? A. No sir, he stuck his foot under the car.

"Q. He just deliberately come up there and stuck his foot under your car so you could run over it? A. It looked that way."

The trend of the testimony given on this cross-examination was to deny that he touched him at all, though he said he might have touched his leg. But when properly analysed it does not make out

a defense or amount to a very serious denial of the fact that the accident occurred as detailed by the defendant in error and his witnesses, as herein indicated, except in the suggestion that the boy stuck his foot under the car. At any rate the finding of the jury has settled all questions as to contributory negligence and the weight of the proof, which on being confirmed by the overruling of the motion for a new trial, leaves the question here as to whether or not there is any evidence to support the verdict. We think there is abundant evidence to support the verdict. The assignments of error are all overruled and the judgment of the lower court affirmed, with costs against appellant and his securities on the appeal bond.

Portrum and Thompson, JJ., concur.