# GUY AND ZULA LANGSTON v. MEMPHIS STREET RAILWAY COMPANY.

Western Section. November 13, 1931.

Petition for Certiorari denied by Supreme Court, March 26, 1932.

W. G. Cavett, of Memphis, for plaintiffs in error.
Roane Waring, of Memphis, for defendant in error.

OWEN, J. The plaintiffs, Guy B. Langston and wife, Zula W. Langston, have appealed from two judgments rendered against them in the Circuit Court of Shelby County wherein their suits were dismissed. The two suits were instituted by the plaintiffs against the defendant, Memphis Street Railway Company; both suits grew out of the same state of facts and were founded upon a collision between Mr. Langston's automobile and a street car belonging to the defendant. The accident occurred July 6, 1929, on Peabody Avenue in said city; the two plaintiffs were riding in a Chevrolet coupe, going south on Belvedere Boulevard, a street that runs north and south and which crosses Peabody Avenue that runs east and west. Two street car tracks are on Peabody Avenue. The street car that collided with the automobile was going east.

Mrs. Langston's suit was for personal injuries sustained resulting from the collision of her husband's auto with the street car; Mr. Langston's suit was for damages to the car and money expended for medical bills, hospital bills for his wife, and his loss of her services. Mr. Langston received no personal injuries. By consent, both cases were submitted to the same jury, and after testimony offered by both parties, argument of counsel and charge of the court, the jury returned verdicts against each plaintiff and in favor of the

defendant. A motion for a new trial was filed, argued and overruled; an appeal perfected and assignments of error have been filed. The plaintiffs have five assignments of error; all these errors complain of the court's charge.

The plaintiff's declarations were practically the same, with two counts to each declaration, a common law count and the second count alleged the violation of a city ordinance, known as Ordinance No. 705, hereafter more particularly referred to. The plaintiffs also alleged the violation of another ordinance in regard to the speed limit of the City of Memphis, but a recovery upon the violation of this ordinance was abandoned.

To the declarations the defendant filed pleas of not guilty and contributory negligence, but the plea of contributory negligence was waived and defendant relied solely upon its plea of not guilty.

The plaintiff's first assignment of error is that the court committed error in refusing a special request offered by the plaintiffs, which special request was as follows:

"The court charges you for plaintiffs that Section 705 of the city ordinances of the City of Memphis is valid and is as follows:

" 'Sec. 705.—Conductors and drivers of each car shall keep a vigilant lookout for all teams, carriages and persons on foot, and especially children, either on the track or moving towards it, and on the first appearance of danger to such teams or persons, or other obstructions the car shall be stopped in the shortest space possible.'

"And if there was a violation of said ordinance by the Street Car Company and if this violation contributed to and caused the collision and injury to plaintiffs, then you will find for plaintiffs on this question."

By the second assignment of error, it is insisted that the court erred in placing the same responsibility on the plaintiff, Mrs. Zula W. Langston, in recovering as the court did as to Guy B. Langston, the driver of the automobile, it being insisted that she was a guest of her husband and that the same act of negligence did not apply to her as should be applied to the husband.

The fourth assignment complains of the following excerpts from the court's charge:

" 'Gentlemen, that is an issue of fact sharply drawn between the parties, and it is for the jury to determine from all of the evidence which one got there first, because the one reaching it first and undertaking to make use of it had the right of way and it was the duty of the other one to stay off of it.'

"So that the issue for you to determine is who got into and made use of the street first. If the plaintiffs entered first with

their automobile the defendant company is liable for the lawsuit. If the street car reached there, first—Belvedere—the street car company is not liable."

The fourth assignment complains of the court's failing to charge the acts of negligence as averred in plaintiffs' declaration and refusing to charge any acts of negligence, but limited the plaintiff's right to recover solely and exclusively as to who got to the crossing first.

The fifth assignment complains that the court erred in failing to state the issues to the jury and in failing to instruct the jury as to the grounds of negligence involved and upon which plaintiff could recover: and it is insisted that the court took from the jury the entire question of negligence as raised by the pleadings and the testimony.

The facts as to defendant's acts of negligence are alleged by the plaintiff as follows:

"That the plaintiff, Mrs Zula W. Langston, was riding as a guest with her husband, Guy B. Langston, in his car along Belvedere Street, going in a southernly direction, on said July 6, 1929, and had reached Peabody Avenue, and the said husband had driven his car into said Peabody Avenue and was crossing said Peabody Avenue, when the defendant, The Memphis Street Railway Company, owning and operating one of its street cars operated and propelled by its motorman, conductor and employees and representatives of said corporation, negligently and recklessly drove its street car down grade on said Peabody Avenue into the intersection of Belvedere Street, and though the plaintiff's husband had the right-of-way as he had entered into the crossing of said streets and was partially across Peabody Avenue at said intersection of Peabody Avenue and Belvedere Street, yet the defendant negligently and recklessly failed to keep said street car under proper control, negligently and recklessly failed to keep the proper lookout ahead and neglected and failed to stop said street car; and the defendant did then and there see, or could have seen by the exercise of due care, caution and foresight, that the plaintiff was riding in the automobile crossing said Peabody Avenue at said intersection of Belvedere Street. Yet the said defendant neglected and failed to use any precaution or care to stop said street car, but continued to negligently propel and operate said car along and over said Peabody Avenue at a high and reckless rate of speed, and operated and drove said street car so as to strike the automobile in which the plaintiff was riding, with great force, crush-

ing said automobile and causing severe personal injuries to the plantiff.''

The second count makes the following allegations:

''That on or about the 6th day of July, 1929, she was riding with her husband as a guest in his car, a Chevrolet coupe, which was being operated and driven along and over Belvedere Street, going in a southernly direction and had entered into and was going across Peabody Avenue at said intersection in a southernly direction. And the defendant, The Memphis Street Railway Company, then and there being a corporation owning and operating its line of street railway, together with street cars operated and managed by its various and divers employees, was operating and driving one of its street cars along and over Peabody Avenue, and the said defendant did then and there neglect and fail to comply with the ordinance of the City of Memphis known as Sec. 705, which is in the following words and figures, to-wit:

'' 'Sec. 705.—Conductors and drivers of each car shall keep a vigilant lookout for all teams, carriages and persons on foot, and especially children, either on the tracks or moving towards it, and on the first appearance of danger to such teams or persons, or other obstructions the car shall be stopped in the shortest space possible.'

''And the said defendant did then and there negligently and recklessly fail to do as commanded by said city ordinance, and the violation of said city ordinance by said defendant did then and there contribute to cause the injuries hereinafter complained of to the plaintiff.''

''Plaintiff further avers that while she was riding as a guest with her said husband on said date and the car in which she was riding had entered into the intersection of said Peabody Avenue and Belevedere Street in the City of Memphis, Shelby County, Tennessee, and was crossing said Peabody Avenue at said intersection, when the defendant negligently and recklessly failed to conform to the requirements of said city ordinance, but violated city ordinances in the operation of said street car, operated and drove said street car so as to strike the car in which plaintiff was riding, thereby crushing the car and causing the plaintiff severe and permanent injuries.''

It appears from the proof that Mr. Langston was about sixty-two years of age, his wife was about fifty-eight years of age; they had lived in Memphis several years; he operated a farm in Mississippi and one in Arkansas; he was familiar with all the streets in Memphis, familiar with the crossing of Belvedere and Peabody Streets. He

and his wife had been to a picture show the afternoon of the accident; it was a bright, sunshiny day, he testified he approached Peabody Avenue from the north, going down on the west side of Belvedere Boulevard and it appears that there is a neutral strip, or grass plot, in the center of Belvedere Boulevard which separates the north bound traffic from the south bound; this grass plot goes to within about twenty feet of Peabody Avenue. Mr. Langston's testimony was that he looked when he reached the intersection, that he supposed that he was ten or twelve feet into Peabody; that the street car had not reached Belvedere. As the street car approached Belvedere, going east, the plaintiff was afraid and tried to undertake to go across and he turned his car to the left, or an easterly direction, but before he could get his car off of the tracks, or out of the reach of the street car, his automobile was struck. Mrs. Langston testified that the street car had not entered Belvedere, that she did not know how far the street car was, she stated: ''Well, I don't know much about distance, but it seemed to me that it was about twenty-five yards, coming fast; it seemed that way to me.''

L. L. Clark, the motorman, testified in regard to the accident, as follows:

''Well, I was going east on Peabody, slowed down at the street intersection, brought my car under control. I did not stop but slowed down. This automobile was coming south on Belvedere about sixty or seventy feet back. Well, the street was clear for me, so I pulled on out and started across the street. I had the south driveway blocked, the one he was using. Then I seen he was not going to stop, and when he came around this neutral strip, in place of stopping, why he turned the way I was going and about seven feet from the east curb on this side he ran around and struck the corner of my car, and I just pushed him around like that.

''Q. Mr. Clark, when you slowed down at Belvedere before starting into Belvedere, you testified you did not stop but simply slowed down? A. No sir, slowed down.

''Q. At the time that you started into Belvedere, where was this automobile then? A. It was about sixty or seventy feet back upon Belvedere.

''Q. Had it reached the Peabody crossing? A. No, sir.

. . . . . .

''Q. When you actually crossed this west curb line going into Belvedere, when you started across Belvedere; state whether or not at that time this man's car was in the center of Peabody or near the westbound track? A. He was not either one; he was away back up here. (Indicating.)''

W. H. Lawhorne and Mrs. Laura Carr, passengers on the street car, corroborate Clark. Lawhorne said he was sitting on the north side of the street car and was looking north and that the Chevrolet of the plaintiffs was at least thirty-five or forty feet back north of Peabody when the street car entered Belvedere. There was a conflict as to who reached the crossing first, the automobile or the street car. The jury has resolved this conflict in favor of the defendant.

There is no assignment of error on the question of evidence. There was no allegation or averment whereby the doctrine of the "last clear chance" was invoked. The two counts of the declarations are similar and the ordinance, No. 705, set out in the second count, is simply declaratory of the common law. R. R. v. Haynes, 112 Tenn., 712, 81 S. W., 374.

In its final analysis, the declaration alleged negligence of defendant in doing certain things and in failing to do some other things, when the plaintiffs were crossing Peabody Avenue, having reached the crossing first and having the right of way. All of plaintiffs' proof went to substantiate the averments of the declaration that the plaintiffs had reached the crossing first and had a right to the crossing.

The proof shows that the Street Railway had a double track on Peabody Avenue, and the one that struck plaintiff's automobile was on the south track. There is no definite proof as to the width of Peabody Avenue, but the west-bound traffic passed north of the north street car track and east-bound traffic of automobiles and other vehicles used that portion of Peabody south of the south street car track.

The trial judge stated to the jury in his charge, the following:

"Both plaintiffs allege the fact to be that they were driving south on Belvedere, had reached the intersection of Peabody and had driven out into Peabody, when the street car entered the intersection of Belvedere going east, and negligently collided with the automobile in which the plaintiffs were riding. That is the theory of the plaintiffs—both of the plaintiffs in this lawsuit.

"The defendant pleads not guilty, which means that the defendant denies that it was guilty of any negligence at all which brought about the accident, and denies that the plaintiffs got into the intersection first.

"Now, gentlemen of the jury, the theories are rather clean and clear cut, involved in this lawsuit. The plaintiffs claim that they reached the intersection first and were crossing between the north curb line of Peabody Avenue and the street car tracks, had gotten out into the street, when the street car entered upon the west side of Belvedere and ran into them and inflicted the injuries for which they sue.

"The theory of the defendant is that their street car entered the street first and had gotten into Belvedere when this automobile, coming from the north, entered the intersection, entered it at a high rate of speed and ran into the street car.

"Now, as I say, that is a sharp issue of fact between the plaintiffs and the defendant and it is not part of the business of the judge to decide; that is for the jury. It is quite true that the judge must tell you the rules of law applicable to the rights of these people involved and to give you the rules of law for weighing the evidence.

"It is the law, gentlemen of the jury, that both the driver of an automobile and the driver of a street car approaching an intersecting street have their respective vehicles under control and should be prepared to surrender the right-of-way to the one, being in the lawful and proper use of the street that reaches the intersection first and undertakes to use the street. The street car company had no greater right at that crossing than did the operator of the automobile neither did the operator of the automobile have any greater right there than the street car. Their rights under the law were equal and it was the duty of each driver to approach carefully, and surrender the right-of-way to the one first reaching the intersection and undertaking to use the street. The plaintiffs claim that they reached there first, were in the lawful use of the street, and the street car, after they got there, ran into them and inflicted the damages for which they sue.

"The defendant's theory is that it entered from the west, crossed into Belvedere some distance before this automobile reached there—reached Peabody.

"Gentlemen, that is an issue of fact sharply drawn between the parties, and it is for the jury to determine from all of the evidence which one got there first, because the one reaching it first and undertaking to make use of it had the right-of-way and it was the duty of the other one to stay off of it."

. . . . . . .

"So that the issues for you to determine are who got into and made use of the street first, if the plaintiffs entered first with their automobile the defendant company is liable in the lawsuit. If the street car reached there first—Belvedere, the street car company is not liable. As I say, it is your business to determine what the fact is upon that sharply drawn issue between the parties."

We are of the opinion that the court did set forth clearly and emphatically the testimony of each party to the two law suits. We

do not think it was necessary for the company to enlarge upon the charge, but to place the court in error for mere meagreness of its charge, the party complaining would have to call the court's attention to the meagreness if the party aggrieved desired to have the court amplify or supplement its instructions by special requests.

"The rule is well settled that when the charge upon any point is meager, but good as far as it goes, it will not be reversible error, unless the party injuriously affected requests further instructions." Citizens Street Railway Co. v. Burke, 98 Tenn., 649, 40 S. W., 1085; National Hosiery Co. v. Napper, 124 Tenn., 155, 135 S. W., 780; L. & N. R. Co. v. Johnson, 7 Higgins, 458.

We are of the opinion that the court did not commit any prejudicial error in the charge given to the jury.

As to the assignment on the court's refusal to charge the special request complained of as to ordinance 705, this special request is not absolutely correct. This special request, if granted, would have placed liability upon the defendant if it violated ordinance 705, whether the jury found the defendant's violation of said ordinance the proximate cause of the injuries or collision, or not. Of course, in relying upon the violation of a city ordinance in cases of negligence, to hold the defendant liable for violation of the ordinance must be one of the proximate causes of the injury sued for. Fairbanks Morse & Co. v. Gambill, 142 Tenn., 634, 222 S. W., 5; Anderson v. Miller, 96 Tenn., 36, 33 S. W., 615; Chattanooga Light Co. v. Hodges, 109 Tenn., 331, 70 S. W., 616.

The second count being a repetition of the first count so far as the acts of negligence complained of were concerned, in our opinion under the facts of this case it is immaterial whether the court charged the city ordinance 705 or not.

Furthermore, we are of the opinion that under the facts of this case the question of the wife being the guest of her husband is immaterial. If the defendant was guilty of no negligence, then neither plaintiff could recover and the question of guest, or the question of contributory negligence does not enter into the law suit. Under the facts as established by this record, we are of the opinion that the merits of the case are with the defendant and on the question of the charge of the court there is no prejudicial error. Chapter 32 of the Acts of 1911 is applicable to this case.

It results that all the assignments of error are overruled and disallowed; the judgments of the lower court are affirmed. The appellants and their surety on the appeal bond will pay the costs of the appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.