## ROWENA LYMAN et al. v. AMERICAN NATIONAL BANK & TRUST COMPANY. —346 S. W. (2d) 289.

Eastern Section.   May 5, 1960.

Rehearing Denied June 29, 1960.

Certiorari Denied by Supreme Court March 10, 1961.

Edgar D. Walter and John S. Wrinkle, Chattanooga, for plaintiffs in error.

Edward E. Davis, Chattanooga, for defendant in error.

HOWARD, J. This appeal is from a judgment sustaining the will of Eliza W. Crenshaw, who died in the City of Chattanooga on November 19, 1957, at about 80 years of age. The purported will was executed on November 19, 1953, 4 years before the testatrix's death, at the main office of American National Bank & Trust Company, and was witnessed by three employees of said Bank. By the terms of the will the testatrix's property, which consisted mostly of real estate, was left in trust to said Bank, which was named Executor and Trustee. The will also provided "that the income from said property be first applied to the taxes, insurance, necessary repairs, and a 10% commission paid to said Trustee for the management of same, and that after all necessary expenses incidental to said property have been paid,

the remainder of said income be placed in a Trust Fund to be used for elderly and indigent people.''

The will was probated in solemn form in the Chancery Court, Part 2, of Hamilton County on January 6, 1958, upon the testimony of two of the subscribing witnesses, Avis W. Marler and Margaret McCullough, and the American National Bank & Trust Company was duly appointed executor and trustee. Thereafter, this contest was filed by the testatrix's sister, Rowena Lyman, for herself and on behalf of the nieces and nephew of the deceased. The contestants' petition alleges that the will should be set aside on the following grounds:

(1) The testatrix neither signed nor executed said instrument as her will;

(2) That testatrix was mentally incapable of making a will; and

(3) That if the testatrix did sign said instrument as her will, she did so by reason of duress and undue influence of the officers and agents of the American National Bank & Trust Company.

A transcript of the proceedings in the Chancery Court was duly certified to the Circuit Court where, after issues were joined, the trial resulted in a jury verdict sustaining the will. After the verdict the original attorneys, Wood & Wood, retired from the case, and attorneys Wrinkle and Walter were employed by contestants to continue the contest. These attorneys filed motion for a new trial, which was overruled, and this appeal in error was prayed, granted and perfected.

By assignment of error No. 1, it is urged that the trial Judge erred in refusing to grant contestants a new trial

and a directed verdict against the purported will, because the instrument was never offered or introduced in evidence.

The record shows that the purported will was filed as an exhibit to the petition for probate in the Chancery Court, that it was subsequently transferred as an exhibit to the Circuit Court where it remained for some time before the trial, and that after the jury was selected it was announced that this was a will contest involving the will of Eliza W. Crenshaw, and the will was then read, without objection, to the jury; that during the trial the purported will was presented to attesting witnesses who, without objection, identified the testatrix's signature as well as their own, and that in his charge the Circuit Judge, without objection, read the will in its entirety to the jury.

The rule seems to be well settled that where exhibits to pleadings are filed and considered in the Trial Court, and witnesses are examined regarding them without objection, or where the objections have been waived, as here, they may be considered in evidence as a part of the record, and objections made thereto on motion for a new trial come too late. Webb et ux. v. Schultz et al., 31 Tenn. App. 587, 218 S. W. (2d) 758; Adams v. Jackson, 23 Tenn. App. 118, 126 S. W. (2d) 899; Tenn. Procedure in Law Cas., Sec. 1255, pp. 475, 476. Assignment 1 is, therefore, overruled.

By assignments 2 and 3, it is urged that the Trial Judge erred in refusing to grant contestants a new trial and a directed verdict against the purported will because one of the attesting witnesses, Betty Ruth Payne, who was available, was not produced as a witness at the trial, as required by T. C. A. secs. 32-204, 32-406.

The undisputed proof shows that the attesting witness, Betty Ruth Payne, was unavailable, as appears from the following testimony of proponent's witness, Charles A. Comer:

"Q. And Betty Ruth Payne, is she here today? A. No, she is unavailable, she is no longer in the employment in the bank, and I have written a letter to her but had no response, and I do not have any further address, other than the last.

"Q. The letter did not come back. A. No, sir.

"Q. You have made a search for that person. A. I have, yes, sir.

"Q. And have not been able to locate her? A. I have not."

■ Both Sections T. C. A. 32-204 and 32-406 mandatorily provide that a written will shall be proved by all the living witnesses "if to be found". Under these provisions it is the function of the Trial Judge to determine whether a witness is available or can be found, and where, as here, the explanation regarding the absent witness satisfies not only the Trial Judge but the contestants as well, the requirements have been substantially met. Assignments 2 and 3 are, therefore, overruled.

By assignment 4 it is urged that the Trial Judge committed error in reading the purported will to the jury as a part of his charge, because the instrument had never been offered or introduced in evidence. For the reasons stated under assignment of error 1, this assignment is overruled.

By assignment 5 it is urged that the Trial Judge committed error in reading the purported will to the jury

as a part of the Court's charge, because one of the attesting witnesses was not produced and did not appear and testify during the trial. For the reasons stated under assignments of error 2 and 3, this assignment is overruled.

By assignment 6 it is urged that the Trial Judge committed error in omitting from his charge the name of the absent attesting witness, Betty Ruth Payne. This omission was not affirmative error, T. C. A. secs. 27-116, 27-117, and this assignment is overruled.

By assignments 7 to 15 inclusive, the contestants complain of (1) portions of the Trial Judge's charge, and (2) the failure of the Trial Judge to charge the law applicable to certain phases of the case.

After carefully considering the portions of the charge complained of, in the light of the general charge, we find no error therein that would justify a reversal of the case. The entire charge, which covered several pages of the record, was clear, comprehensive and reasonably complete, and there were no requests.

It is the established procedure in this State that inadequate or incomplete instructions to the jury are not reversible error when the party affected thereby fails to call the error to the attention of the court, and when adequate and further instructions are not requested. Brakebill & Hamilton v. South Knoxville Contracting & Const. Co., 14 Tenn. App. 531; Langston v. Memphis St. Ry. Co., 14 Tenn. App. 288; Travis v. Bacherig, 7 Tenn. App. 638; Cochran v. Gaither, 9 Tenn. App. 247; Tevis v. Proctor & Gamble Distributing Co., 21 Tenn. App. 494, 113 S. W. (2d) 64; Carney v. Cook, 158 Tenn. 333, 13 S. W. (2d) 322; National Life & Acc. Ins. Co. v. Morrison,

179 Tenn. 29, 162 S. W. (2d) 501. Moreover, errors based on probabilities are not grounds for reversal of a judgment, but there must be an affirmative showing that the alleged error affected the results of the trial. T. C. A. sec. 27-117. Management Services, Inc. v. Hellman, 40 Tenn. App. 127, 289 S. W. (2d) 711.

Finally, by assignments 16, 17 and 18, it is urged that (1) the evidence preponderates against the verdict of the jury; (2) that the verdict was contrary to the law and the evidence; and (3) there was no evidence to support the verdict of the jury.

██ An assignment of error that the evidence preponderates against the verdict not only presupposes that there was evidence to support the verdict, but under our decisions such an assignment presents no question for review by this Court. Sullivan v. Crabtree, 36 Tenn. App. 469, 258 S. W. (2d) 782; Burns v. Duncan, 23 Tenn. App. 374, 133 S. W. (2d) 1000; Atchley v. Sims, 23 Tenn. App. 167, 128 S. W. (2d) 975. Likewise an assignment that the verdict is contrary to the law and the evidence, presents no question for review by this Court. Marion Const. Co. v. Steepleton, 14 Tenn. App. 127; Record v. Chickasaw Cooperage Co., 108 Tenn. 657, 69 S. W. 334; Minton v. Stahlman, 96 Tenn. 98, 34 S. W. 222; Lasater Lumber Co. v. Harding, 28 Tenn. App. 296, 189 S. W. (2d) 583.

██ We shall now consider the assignment that there was no evidence to support the verdict.

In considering this assignment, we are required to take the strongest legitimate view of all the evidence that supports the theory and contention of the proponent, disregard all evidence and inferences to the contrary, and

if we find there was any material evidence to support the verdict, it must be sustained. Jones v. Sands, 41 Tenn. App. 1, 292 S. W. (2d) 492; Melody v. Hamblin, 21 Tenn. App. 687, 115 S. W. (2d) 237; Taylor v. Taylor, 14 Tenn. App. 101.

The above rule governs the trial of will contests as in other cases. Jones v. Sands, supra; Melody v. Hamblin, supra; Taylor v. Taylor, supra.

First, did the testatrix, Eliza W. Crenshaw, sign or execute the purported instrument as her last will and testament, as required by T. C. A. sec. 32-104, which reads as follows:

"The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

"(1) Testator. The testator shall signify to the attesting witnesses that the instrument is his will and either

"(a) Himself sign,

"(b) Acknowledge his signature already made, or

"(c) At his direction and in his presence have someone else sign his name for him, and

"(d) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.

"(2) Witnesses. The attesting witnesses must sign

"(a) In the presence of the testator, and

"(b) In the presence of each other."

According to the undisputed proof, the testatrix requested the three attesting witnesses to witness her will; that following the testatrix's request the will was signed by her and then by the three attesting witnesses in the presence of the testatrix and in the presence of each other. Therefore, the requirements of T. C. A. sec. 32-104 were met.

Second, was there any evidence to support the jury's verdict that the testatrix had sufficient mental capacity to make a will? On this issue there was a sharp conflict in the evidence.

According to contestants' proof the testatrix, following the death of her husband in 1951, suffered from visions, hallucinations, forgetfulness, progressive senility, and when alone she talked to herself; that in 1952 she had a dream that her husband's body had been removed from his grave, and after having the grave opened and finding that the body had not been removed, she was no longer disturbed by the dream. There was also proof that the testatrix would close herself up in a room of her home where she cried and grieved over the loss of her husband.

Progressive senility, forgetfulness and talking to one's self are but natural characteristics of old age, and the jury could have found that grief over the loss of her husband was attributable to the realization of her loneliness and helplessness.

In support of the proponent's contention that the testatrix was mentally capable of making a will, the proof showed that she operated a small grocery store for more than a year following her husband's death; that from the time the store was closed until only a short time before

her death, she looked after her several pieces of property, collected the rents, paid the taxes and went to the bank where she cashed checks, made deposits, and performed other business functions without advice or assistance.

On the date the will was executed, the testatrix went to the bank alone. The instrument was prepared by some unknown draftsman, and whether this had been done previously, the record does not disclose. Regarding the mental condition of the testatrix at the time, Avis W. Marler, one of the attesting witnesses, testified as follows:

"Q. I believe you have already testified that you were a witness to this will and you were present when it was signed? A. Yes, I have.

"Q. Based upon her actions there, her words and her appearance, and those things upon which you would form an opinion, would you say that this Mrs. Crenshaw knew what she was doing at the time she executed this will? A. I think she did, I think she was very aware.

"Q. She was a person then of sound mind, at that time? A. From the indications—what few indications we had—she seemed to be very sane."

The above witness further testified that during the execution of the will, reference was made to the instrument as being the testatrix's "last will and testament," and that her (testatrix's) "very affirmative answer indicated that she certainly knew what she was doing." We, therefore, find there was material evidence to support the verdict of the jury on the issue of testamentary capacity.

■ The rule is well settled that where the evidence is in conflict, as here, and there is material evidence both ways on fact questions, this Court will not disturb the jury's verdict. East Tennessee & W. N. C. R. Co. v. Gouge, 30 Tenn. App. 40, 203 S. W. (2d) 170.

Third, was there undue influence exerted upon the testatrix by the agents of the American National Bank & Trust Company, the named executor and trustee in the will?

■ After reviewing the record, we find there was very little if any proof introduced bearing on this issue, and that the contestants did not urge or rely upon the rule of independent advice. Under the circumstances, the Circuit Judge correctly charged the jury that the burden was upon the contestants to prove undue influence. Hammond v. Union Planters Nat. Bank, 189 Tenn. 93, 222 S. W. (2d) 377.

Moreover, it appears that the testatrix, after the will was executed, had ample opportunity to change it had she so desired.

■ The general rule is that where a mentally competent testator has ample opportunity to revoke his will subsequent to the operation of an alleged undue influence upon him but makes no change in it, the effect of the evidence of the vitiating influence is regarded as having been destroyed. Peery v. Peery, 94 Tenn. 328, 29 S. W. 1; Cude et al. v. Culberson et al., 30 Tenn. App. 628, 209 S. W. (2d) 506.

It results, for reasons indicated, that the judgment is affirmed at contestants' costs, and the case will be remanded to the Circuit Court of Hamilton County in order

that the judgment may be certified to the Probate Court to be entered of record.

McAmis, P. J., and Hale, J., concurring.

## On Petition to Rehear

HOWARD, J. The contestant herein has filed a petition to rehear respectfully complaining that her case was incorrectly decided. In support of the petition learned counsel make an able and earnest argument, but it is only a reargument of matters already painstakingly considered and determined by us. It points out no new matter not heretofore considered, but only reargues things which counsel say were erroneously decided by us.

"The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those things which counsel supposes were improperly decided after full consideration." Louisville & N. Railroad Co. v. United States Fidelity & Guaranty Co., 125 Tenn. 658, 691, 148 S. W. 671, 680; Gulf, M. & O. R. Co. v. Underwood, 182 Tenn. 467, 476, 187 S. W. (2d) 777, 780; Rule 32, 185 Tenn. 879; Colbaugh v. State, 188 Tenn. 103, 112, 216 S. W. (2d) 741; Black v. Love & Amos Coal Co., 30 Tenn. App. 377, 389, 206 S. W. (2d) 432, 437, and cases there cited.

Therefore, the petition is denied at petitioner's costs.

McAmis, P. J., and Hale, J., concurring.