STATE OF TENNESSEE, DEPARTMENT OF
HIGHWAYS, Charles Speight, Commissioner,
Petitioner-Appellee, v. J. MORGAN HURT, RUTH
WILSON HURT, Defendants Not Appealing, GOLF
ENTERPRISES, INC., Defendant-Appellant.
—478 S.W.2d 775.

Middle Section. October 29, 1971.

**Certiorari** Denied by Supreme Court April 3, 1972.

690

692

Taylor, Schlater & Smith, Nashville, for petitioner-appellee.

Howser, Thomas, Summers & Binkley, Nashville, for defendant-appellant.

TODD, J. This is an eminent domain proceeding wherein Golf Enterprises, Inc., lessee of a part of the property taken, has appealed from the award of damages. The owners, J. Morgan Hurt and Ruth Wilson Hurt, have not appealed.

Initially, it is necessary to consider the appellee's motion to dismiss the appeal because the property owners (lessors) are indispensable parties to the appeal and are not before this Court in this appeal.

Appellees insist that the interests of lessor and lessee are so inseparable that the appeal of one cannot be heard without the joinder of the other. No authorities are cited to directly support this proposition; appellees rely upon the rule that the sum of evaluations of leasehold and reversion estates cannot exceed the total value of the fee, and the sum of the separate allocations of damages to lessor and lessee cannot exceed the single allocation which would be made for an identical taking from a single defendant who owned all interest in the land. Moulton v. George, 208 Tenn. 586, 348 S.W.2d 129 (1961).

In Chattanooga and Tennessee River Power Co. v. Lawson, 139 Tenn. 354, 201 S.W. 165 (1917), the suit of

a tenant for damages resulting from construction of a dam was dismissed on several grounds, among which was a former proceeding in eminent domain wherein the landlord had been compensated for the taking of part of his land for the dam. Although the tenant was not a party to the former proceeding, the compensation paid therein to the owner was held to be a bar to the subsequent suit of the tenant.

In Mason v. City of Nashville, 155 Tenn. 256, 291 S.W. 1074 (1927), the city condemned a part of a two-story building by resolution of the city council and appraisal of commissioners. By the initiative of the city, the commissioners considered the claims of both the owner and the tenant, Mason, who held a lease on the second floor of the building. The commission fixed compensation due the owner, who accepted same and did not appeal. The commission denied compensation to the tenant, Mason, who appealed to the Circuit Court where he was likewise denied compensation. The Supreme Court reversed and remanded to the Circuit Court for hearing as to the amount of compensation due Mason. This case is comparable with the present case because the tenant was permitted to pursue the process of appeal from the city commission through the Circuit Court and Court of Appeals to the Supreme Court, all without joinder of the landlord.

Thus, in cases such as Chattanooga and Tennessee River Power Co. v. Lawson, where only the landlord is made a defendant, it appears that all damages for the taking may be assessed and paid to the landlord who might thereby become accountable to his tenant if the

tenancy were impaired. Where, as in *Mason* and the present case, both landlord and tenant are made parties to the condemnation suit, each defendant is permitted to appeal from an unsatisfactory award without joinder of the other, with the sole limitation that the sum of the recoveries allowed to landlord and tenant may not exceed the fair compensation due for the taking.

In Moulton, Commissioner, v. George, supra, the condemnor appealed, thereby bringing both landlord and tenant to the appellate court. The remand did require a retrial as to both landlord and tenant, but this was made possible by the appeal of the condemnor and the resultant reservation of final judgment as to both landlord and tenant. In the present case, the condemnor has permitted the award to the lessor to become final and has paid it, thus precluding any reconsideration of the amount due the lessor. So long as the lessee does not complain that the lessor was erroneously awarded a part of the compensation which was rightfully due the tenant, then the tenant has no cause or grounds to appeal from the award made to the landlord. The tenant makes no such insistence in this appeal, hence he had no duty to bring the landlord's rights to this Court on appeal; and his failure to do so cannot defeat this right to a review of the award to him (the tenant). See 27 Am.Jur.2d, Eminent Domain, sec. 448, p. 364; Stubbings v. Village of Evanston, 136 Ill. 37, 26 N.E. 577 (1891). Any relief to the tenant as a result of this appeal must be through the means of increasing the total compensation due for the taking and not by reallocation or re-apportionment of the total compensation heretofore assessed by the jury.

The motion to dismiss is respectfully overruled.

Another matter requiring preliminary discussion is a Consent Order entered in this Court pending appeal, which Order reads as follows:

"In this cause, upon suggestion of the parties that the requested instructions to the jury of appellant, Golf Enterprises, Inc., which were attached to and made a part of motion for new trial, was omitted from the transcript prepared by the Clerk and the agreement that it may be supplied, as evidenced by signature of counsel for the parties, it is

ORDERED that the request for instructions submitted by appellant, Golf Enterprises, Inc., attached to and made a part of the motion for new trial, may be filed herein."

■ Where the bill of exceptions does not affirmatively show that a special request was seasonably submitted and *refused by the Trial Court,* the issues of failure to so charge may not be raised on appeal. Hayes v. Gill, 216 Tenn. 39, 390 S.W.2d 213 (1965), Chicago Guaranty Fund Life Soc. v. Ford, 104 Tenn. 533, 58 S.W. 239 (1900); McCleary v. Morgan, 60 Tenn.App. 578, 449 S.W.2d 440 (1969).

■ An effort to amend a bill of exceptions by stipulation is improper. Campbell v. Francis, 53 Tenn.App. 80, 378 S.W.2d 790 (1964).

■ The Consent Order, quoted supra, does not in fact undertake to supply a necessary part of the bill of ex-

ceptions, but merely attempts to establish that the special requests were attached to and made a part of the motion for new trial. This is insufficient to present the question for review. Nashville St. R R v. O'Bryan, 104 Tenn. 28, 55 S.W. 300 (1900), Taylor v. Robertson, 12 Tenn.App. 320 (1930), Nashville Ry. & Light Co. v. Owen, 11 Tenn. App. 19 (1929).

The reason for the foregoing rule is the necessity of a showing of a timely submission of the request and a refusal thereof. Evidence of such would not appear from a motion for a new trial.

Thus, regrettably, the matter presented by said Consent Order cannot be considered.

The issues presented by this appeal require a somewhat detailed recitation of the background of the controversy.

The condemnation was made necessary by the improvement of Old Hickory Boulevard where it crosses the Cumberland River near Old Hickory, Tennessee. At this point, the highway runs generally east and west and the river runs generally southward. The project included reconstruction of the approach to the bridge, thereby necessitating widening the right-of-way to accommodate a "fill" on which the said approach was built. Also required was space for a widened entrance into the highway from the affected property.

The affected property consisted of 153.7 acres which fronted aproximately 2,500 feet on the northside of Old Hickory Boulevard and approximately the same distance

on the east side of the Cumberland River and was owned by Mr. and Mrs. Hurt, who have not appealed.

In October, 1966, Mr. and Mrs. Hurt leased 80 acres of the 153.7 acres to the appellant, Golf Enterprises, Inc., for a term of twenty years at $500.00 per month with option of renewal for additional twenty years at $700.00 per month. The leased 80 acres, which will be referred to as Tract 2, occupied the southeast corner of the Hurt property, fronting about 1,800 feet on the highway right-of-way and about 1,900 feet on the river and had been converted by lessee into a golf course at a cost of $350,-000.00. The remaining, unleased, portion of the Hurt property was generally "L-shaped." It consisted of a strip north of the leased section extending from the river eastward and a strip east of the leased section fronting about 600 feet on the highway and extending from the highway northward to the unleased strip north of Tract 2. This unleased portion will be referred to as Tract 1.

The entire property slopes toward the river, hence the highest part of the property is at its eastern extremity and its lowest level is near the river on the west.

The unleased portion (Tract 1) lies generally level with, or above the roadway throughout its frontage.

The leased portion (Tract 2) is approximately level with the roadway at its eastern extremity where it adjoins Tract 1. From this point westward, Tract 2 slopes downward toward the river on the west and the roadway rises on the approach to the bridge; so that the roadway and bridge are considerably above ground level at the western (river) border of Tract 2.

The petition describes two parcels to be condemned. Parcel No. 2 fronts 90 feet on the right of way and extends northward between parallel curved lines of 233 feet and 156 feet respectively to a dead line on which it measures 90 feet. The petition does not state the area of this parcel, but mathematical computation from its measurements produces an approximate area of .4 acre. Approximately 15 feet of the 90 foot frontage and approximately .1 acre of the .4 acre area of this parcel encroaches upon and occupies part of Tract 1 (unleased portion). The remainder of the frontage (approximately 75 feet) and of the area (.3 acre) of Parcel 2 is taken from Tract 2 (leased portion). Thus it is seen that Parcel No. 2 was .4 acre located at the junction of the frontage of Tracts 1 and 2, where the land was approximately level with the public road, a small part of this taking was from Tract 1 (unleased), and the major part of this taking was from Tract 2 (leased).

Parcel 2 was taken at a point where there had been a driveway located entirely within Tract 2 for the exclusive use of Tract 2 (leased property). Parcel 2 was used to enlarge the driveway for the use of the public in general, and particularly for access to Tract 2, and Tract 1 which had not previously enjoyed the use of this particular driveway.

Parcel No. 1 was a triangular strip taken to accommodate a "fill" to support the ascending approach to the bridge. It consisted of 1082.6 feet of frontage which began about 160 feet west of Parcel 2 and extended westwardly toward the river, gradually widening from zero depth at the beginning to a depth of 160 feet at its western extremity. The petition does not state the area of

this parcel, but mathematical computations produce an approximation of 3.07 acres.

In addition to the two parcels taken, the right of access to the public highway from both Tracts 1 and 2 was terminated except by way of said new driveway on Parcel 2 and a 65-foot section of the frontage of Tract 1 at its eastern extremity. Said limitation of access was and is effectuated by the usual no-access right of way fence upon the entire highway frontage of the entire tract except for the said new driveway and the 65 feet of frontage at the extreme east corner of Tract 1.

Thus, in summary, there was a tract of 153.7 acres belonging to the Hurts, of which 80 acres was leased to Golf Enterprises, Inc., and 73.7 acres of which was the unencumbered property of the Hurts. The 80 acre leased tract (Tract 2), in respect to which both the Hurts and Golf Enterprises, Inc., held an interest, was affected by the taking of 3.07 acres (Parcel 1) at one point and .3 acres (Part of Parcel 2) at another point and the construction of a no-access fence throughout its highway frontage except for the driveway on Parcel 2. The 73.7 acre unleased residue (Tract 1), in which only the Hurts were interested, was affected by the taking of .1 acre (Part of Parcel 2) and the erection of the non-access fence throughout the frontage except for the said easterly 65 feet; however, Tract 1 was benefitted by access to the driveway whereas it did not previously have access to the entrance drive on Tract 2.

The petition for condemnation simply described the two tracts to be taken and named Mr. and Mrs. Hurt and Golf Enterprises, Inc., as defendants without indicating their interests.

The defendants moved the Circuit Court to separate the trial of the issues relating to the separate tracts. This motion was overruled by a Circuit Judge who did not preside over the subsequent trial.

A fifteen day jury trial resulted in the following awards:

For the taking of .1A from the unleased residue and the enclosure by non-access fence, Mr. and Mrs. Hurt were awarded $1,500.00 for land taken and $30,900.00 for damages to residue.

For the taking of 3.37 acres from the leased 80 acre tract, the value of land taken was fixed at $8,088.00 which was divided equally, that is, $4,044.00 to the Hurts and $4,044.00 to Golf Enterprises, Inc. The incidental damages to the leased 80 acre tract were assessed at $8,852.00 and awarded entirely to Golf Enterprises, Inc.

Neither verdict nor judgment mentioned damage to the 80 acre tract from reduction of access to the highway.

The first assignment of error is as follows:

I

"The court erred in overruling Appellant's objection to taking and motion to confine to one suit property included in leasehold interest of Golf Enterprises, Inc."

On July 21, 1969, all defendants joined in a pleading entitled "Objection to Taking and Motion to Compel Petitioner to Confine to One Suit Property Included in

Leasehold Interest of Golf Enterprises, Inc.'' The pleading set out the distinguishing features of the 80 acre leased tract and the 73.7 acre residue and the separate taking being made from the separate tracts and prayed:

''. . . that the respective interests of said parties be separated into two separate suits, and the present suit dismissed.''

The technical record contains no specific ruling upon the aforesaid pleading and its prayer, the next action of the court being an ''Order of Condemnation and Appropriation,'' whereby the petition for condemnation was sustained, the described property was declared to be condemned, and a writ of possession was awarded to petitioner. It must be presumed therefore that the said ''Order of Condemnation and Appropriation'' was a rejection of the contentions of the parties that the suit should be divided into two parts or dismissed. This presumption is reinforced by the subsequent consolidated trial over the renewed oral objection of the appellant.

In the case of Teas v. Luff-Bowen Co., 147 Tenn. 651, 251 S.W. 44 (1923), there was a suit against the installer of a heating plant which caused a residence to be destroyed by fire. The owners of the life estate joined the owners of the remainder in a suit for damage to the realty. In the same suit, the same plaintiffs joined in seeking damages for the loss of their respective chattels and their respective personal injuries. The Supreme Court affirmed the refusal of the Trial Court to permit the joinder of such multifarious actions, even by the same plaintiffs.

■ Of course, an eminent domain proceeding is not identical with a tort action and, to some degree at least, eminent domain procedure is statutory. However, in the absence of statute, the precedents of common law, common sense and logic are of great and persuasive assistance in reaching the justice of a controversy arising out of public condemnation of private property.

■ If, instead of a direct suit by the condemnor, this were an inverse condemnation suit by the lessor and lessee, there would be good grounds for requiring the plaintiffs to file separate suits, that is, one suit by the Hurts for the unleased Tract 1, and joint suit by the Hurts and Golf Enterprises, Inc. for the leased Tract 2. The same reasons would support the wisdom of separating a direct condemnation suit arising out of the same circumstances.

Section 20-801, T.C.A., provides in part as follows:

*"20-801. Form and contents.*—The declaration shall state the plaintiff's cause of action. It may contain several statements or counts. But *where several distinct causes of action against the same party are joined,* the *court may direct separate trials of the issues. . . ."* (Emphasis supplied)

■ Where distinct causes of action are joined in separate counts, the court may order separate trials on the separate issues made on the distinct causes of action. Necessary v. Gibson, 212 Tenn. 528, 370 S.W.2d 550 (1963) and other cases annotated under sec. 20-801, supra.

■ The petition for condemnation in this case did not state separate causes of action, but did describe separate tracts to be taken, and the separate tracts were taken from larger tracts which were indeed separated by separate uses and distinctive ownership. Tract 1 was owned by the Hurts and used for grazing cattle. Tract 2 was owned by Golf Enterprises, Inc. (lessee for 40 years) and the Hurts (lessors for 40 years with reversion thereafter) and was being used as a golf course.

Viewed in another aspect, if the taking had involved only one of the tracts, as for example Tract 1, it is extremely doubtful that the owners could have successfully asserted a claim for incidental damages to the entire area of Tracts 1 and 2 on the ground of unity of use. The only unity of Tracts 1 and 2 is their contiguous situation and the possibility of unified use after the expiration of the lease. This is indeed remote. See United State ex rel. T.V.A. v. Indian Creek Marble Co. (U.S.D.C. Tenn.) 40 F.Supp. 811 (1941).

It was within the discretion of the Circuit Judge to separate the trial of the issues relating to Tract 1 and those relating to Tract 2. If his failure to do so resulted in a palpable injustice to the appellant, it was reversible error.

To the extent indicated, the first assignment is sustained.

The second, seventh and eighth assignments of error are as follows:

## II

"The trial court erred after overruling Appellant's objection to taking, and notice (sic) to compel petitioner to confine to one suit the property included under lease, and after Appellant had prepared the case and presented his case under the theory that there was one tract, by then considering the case as two separate and distinct tracts, to be tried together, and submitting the issues to the jury as two tracts.

## VII

"The trial court erred in submitting a written form to the jury to be used in arriving at a verdict, when the form referred to two separate tracts, and instructed the jury to return a separate verdict on each tract. (Charge of Court, Bill of Ex., pp. 37, 42)

"This was in error because the court had previously ruled that the case would be tried as one tract, and had overruled to confine suit to one tract.

## VIII

"The trial court erred in submitting written form to jury to be used in awarding verdict, when the form did not include damage to leasehold interest."

Prior to the introduction of evidence, the jury received a preliminary charge from the court which fills 11½ pages of the record. At the conclusion of the trial, a 41-page charge was given, in which the appellant complains of the following:

''What I have attempted to do in this long dissertation is to outline to you problems that you had facing you and hoping that it's of some help in you reaching a decision and the one point that I've gotten down to and didn't quite get to is after you have determined the extent of incidental and severance damages to the 80-acre tract, the leased tract, without regard to who owns it, then, you've got to apportion those damages between the corporation and Mr. and Mrs. Hurt.

''Here again, considering that the corporation will have forty years use of the property or can sell forty— thirty-seven years to be exact and that they put the improvements upon the property and you would consider that they put the improvements on the property, perhaps they should be paid for the improvements taken.

''As far as the long-range damages to the property because of this three and a third acres were removed from it, then, you would consider how much of that would fall within the forty years and how much beyond it and apportion on that basis between the two parties. So, in this form that I have given you, the first main division refers to Tract 1, 73 acres owned by Mr. and Mrs. Hurt. You have to make two determinations; the value of the tenth of an acre and incidental damages resulting from the fence that cut off the potentially commercial land from the highway, almost cut off, not quite, and then, as to Tract 2, you have two determinations and then a division to make of each of those.

''First, the value of the three and a third acres taken and then, apportion that between the Hurts and the

corporation, which I referred to on this written verdict just by the short name, Golf, and second, the incidental and severance damages, the total damages and then, how much of those damages should be paid to Mr. and Mrs. Hurt and how much to the corporation or to the Golf interest.''

The ''form'' which was handed to the jury was not preserved in this record, however the report of the jury which presumably followed said ''form'' was as follows:

''MR. BUSH: The jury finds that the value of the land taken, one-tenth of an acre in Mr. and Mrs. Hurt's property of $1,500. The incidental damages and the fence being put on this property, $30,900. Tract 2, the jury finds that the value of the land taken, 3.37 acres, $8,088. This is divided part to Mr. Hurt $4,044 and the part to the Golf Course, $4,044. The jury finds incidental and severance damages of $8,853. The part to Mr. Hurt zero. The part to the golf course would be $8,853.''

Appellant insists that the initial decision against separate trials was, in effect, reversed in the middle of the trial after appellant had offered its evidence in the anticipation that the entire 153 acre tract would be considered and dealt with as a unit. Appellant declares that its appraisers based their appraisal and testimony upon the former (one tract) theory and that appellant was deprived of an opportunity to present evidence in accordance with the two-tract theory upon which the issues would be presented to the jury.

The brief of appellee appears to agree with appellant's contention that it was error to separate the two tracts for purposes of a verdict, but for a different reason. Appellee states:

"In the case of State, ex rel. Moulton vs. Burkhardt, [212 Tenn. 352], 370 S.W. 2d 411, 413, it is stated that compensation must be paid for land that is taken, regardless of the separate interests in the land, and that the sum of the separate values of the divided interest may not exceed the value of the whole. The Court went on to say that in a proceeding instituted to condemn a leasehold interest, the rule is to ascertain the entire compensation to be allowed as though the entire title or estate in the property belonged to one person and then to apportion the sum between the holders of the different interest, i. e., the Lessor and the Lessee. . . .

\* \* \* \* \* \*

"We submit that under our case law, relative to the compensation of a Lessee, the only logical and reasonable way to try this case would be in one suit where the same jury would first determine the fair cash market value of the total amount of land taken and then arrive at the total incidental damage to all of the remaining property including the leasehold portion and thereby arrive at a total verdict to be paid by the State, thereby carving the leasehold damages out of the total award to the owner."

Unfortunately, no such aggregate verdict was obtained from the jury. As stated supra, the jury found compen-

sation due the Hurts in respect to Tract 1 and found compensation due in respect to Tract 2 which was allocated between the Hurts and Golf Enterprises, Inc.

No verdict was rendered in regard to the damages resulting to the entire 153.7 acre tract. The Trial Court, and this Court can only surmise from the separate findings what an aggregate verdict would have been if called for.

■ The Trial Judge, in his discretion, may direct and supervise the formulation of special issues for answer by the jury. T.C.A. sec. 20-1316.

■ The jury may disregard the instructions relative to a special verdict and return a general verdict. Winters v. Floyd, 51 Tenn.App. 298, 367 S.W.2d 288 (1962).

■ Of course, the parties have the same right and duty to offer special requests to clarify or supplement special issues as in the case of other instructions to the jury.

■ The submission or failure to submit any issue is not ground for reversal unless the ruling resulted in prejudice to the appealing party. T.C.A. sec. 27-117.

■ The second, seventh and eighth assignments present matters which were capable of contributing to an unjust result. To this extent, the assignments are sustained, and the prejudicial results will be discussed hereafter.

The fourth assignment of error cannot be considered because it is based upon special requests not properly

preserved in the record. (See preliminary discussion of Consent Order, supra.)

The fifth and sixth assignments of error are as follows:

## V

"The Court erred in charging that the jury should consider incidental benefits that generally affected the property, without advising that only special benefits could be considered.

## VI

"The trial court erred in failing and refusing to charge the proper method of determining damages to a leasehold interest."

These assignments cannot be sustained because they present matters which might have been readily corrected by special requests for instructions which do not appear in this record. Lyman v. Amer. Nat. Bk. & Tr. Co., 48 Tenn.App. 328, 346 S.W.2d 289 (1960) and authorities cited therein.

If an instruction to the jury is deemed ambiguous, equivocal or inadequate, it is the duty of counsel to submit a special request to amplify and clarify the instruction. If counsel fail to do so, the appellate court will not reverse unless convinced that the complaining party was prejudiced or that justice is about to miscarry. Houser v. Persinger, 57 Tenn.App. 401, 419 S.W.2d 179 (1967).

All assignments of error have been discussed and rejected, except that assignments numbered 1, 2, 7 and 8

have been recognized as presenting matters which might have produced an unjust result or a miscarriage of justice. For a determination of whether prejudice or injustice resulted, it is necessary to consider only the findings of the jury in regard to the value of property actually taken. It will not be necessary to discuss the findings in regard to incidental damages.

As previously pointed out, the property taken was composed of two parcels of 3.07 acres and .4 acre respectively. Instead of submitting to the jury the questions of the value of the 3.07 acre parcel and the value of the .4 acre parcel, the Trial Court saw fit to present a fraction of the .4 acre parcel (.1 acre) for special and separate consideration and to present the entire remainder of the property taken, .3 acre of one parcel and the other parcel of 3.07 acres as a combined acreage of 3.37 acres.

As previously pointed out, the .4 acre parcel was relatively valuable land, approximately level with the highway and situated upon an important thoroughfare; but the other 3.07 acre parcel was of much less importance and value. By being instructed to consider tracts of .1 acre and 3.37 acres, the jury was led to give special attention to .1 acre of the valuable property, but to consider the other .3 acre of valuable property in combination with the less valuable 3.07 acres, thereby to lose sight of the value of the .3 acres.

The resulting confusion in the minds of the jury is definitely displayed in their verdict.

For the specially designated .1 acre, the jury allowed $1,500.00, which is $15,000.00 per acre.

For the 3.37 acres composed of .3 acre of valuable land and 3.07 acres of less valuable land, the jury allowed $8,088.00, which is $2,400.00 per acre.

In order for the findings of the jury to be consistent, the entire .4 acre parcel should have been valued the same. If .1 acre was worth $15,000.00 per acre, or $1,500.00, then the remaining .3 acre should have also been worth $15,000.00 per acre, or $4,500.00.

Assuming that the jury did, consistently, allow $4,500 for the .3 acre, then, by subtraction ($8,088.00 minus $4,500.00), the jury allowed only $3,588.00 for 3.07 acre, which is approximately $1,106.00 per acre, which is far below the lowest value fixed thereon by any witness.

Thus, it is seen that the special findings and verdicts of the jury are either (a) inconsistent with each other or (b) inconsistent with the evidence. In either event, the jury has acted upon a misconception, the result is inconsistent and unjust, and the errors leading to the result cannot be regarded as harmless.

▮ The verdict of the jury and the judgment of the Trial Court in regard to the compensation due to the owners (lessors) for taking part of their property and for incidental damages to the residue has not been appealed from, is final, and cannot be disturbed.

In all other respects, the verdict and judgment herein is reversed and vacated and the cause is remanded for trial anew to determine the fair compensation due Golf Enterprises, Inc., for the value of its interest in the land

taken and the incidental damages to the interest of Golf Enterprises, Inc., in the residue.

The costs of this appeal are taxed against the appellee.

Reversed and Remanded.

Shriver, P. J. (M. S.), and Puryear, J., concur.